Michael G. **HOLDINESS,**
**Plaintiff-Appellant,**

v.

**A.M. STROUD, Jr., et al.,**
**Defendants-Appellees.**

No. 86–4128
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1987.

Paul Henry Kidd, Kidd & Kidd, Monroe, La., for plaintiff-appellant.

Joseph S. Cage, Jr., U.S.Atty., D.H. Perkins, Jr., John R. Halliburton, Asst. U.S. Attys., Shreveport, La., for all defendants-appellees.

Charles E. Welsh, Asst. Atty. Gen., Shreveport, La., for State of Louisiana.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A former member of the National Guard, who was also employed as a civilian technician for the Guard, seeks to obtain damages from a number of his superior officers for alleged violation of his federal constitutional and statutory rights when he was barred from reenlisting, being thus involuntarily discharged from the Guard and from his employment as a civilian technician. Although his complaint invoked numerous bases for jurisdiction and asserted a number of separate claims, the district judge dismissed his suit for failure to state a claim for which relief can be granted in any respect. We affirm the judgment of the district court but modify it to make clear that the dismissal is without prejudice to the plaintiff's right to seek judicial review of any action taken by the Army Board for the Correction of Military Records.

## I. Facts As Set Forth by the Complaint

Because the suit was dismissed for failure of the complaint to state a claim for which relief can be granted, we recite the facts as alleged. Michael G. Holdiness was a military member of the Louisiana Army National Guard, Company D, 528 Engineering Battalion in Monroe, Louisiana, for approximately fourteen years before his involuntary discharge on February 27, 1983. He had been employed as a civilian technician under the National Guard Technician's Act, 32 U.S.C. § 709, for eleven years.

Holdiness' immediate supervisor, Charles H. Dean, who was also a civilian technician and the general mechanic foreman for Company D, discriminatorily denied him promotions and gave him an arbitrarily low job evaluation report, a score of "61," which, although acceptable, made him subject to transfer to Alexandria, Louisiana, which is more than 100 miles from his home. If Holdiness' performance had been rated fairly, he would not have received a score that made him susceptible to being transferred. Dean's actions were motivated by his dislike of Holdiness' father and his desire to see Holdiness transferred to another Guard unit.

Holdiness attempted to appeal his performance evaluation through administrative channels, but various other National Guard officials, who are also named as defendants, retaliated because he had the

"audacity to challenge the 'Guard's' actions." Holdiness then sought assistance from Louisiana State Senator David Ginn. Senator Ginn wrote the Louisiana Adjutant General, A.M. Stroud, J., who is also named as a defendant, and the two United States Senators from Louisiana to enlist their efforts on behalf of Holdiness. The various defendants became so enraged at Senator Ginn's efforts that they undertook retaliatory measures against Holdiness, and, as a result, the officer in charge of civilian assistants reprimanded him. A Guard Lieutenant, Joseph P. Roberts, who is also joined as a defendant, informed Holdiness that he would be barred from re-enlisting as a military member of the Guard, effective February 27, 1983. The Director of Manpower Management for the Guard, Colonel Gerard A. Mumphrey, another defendant, advised Holdiness that his job as a civilian technician would be terminated on the same date because, under the National Guard Technician's Act, a civilian technician must be dismissed if he is no longer a military member of the Guard.[1]

Holdiness' father died after Holdiness had received his poor performance rating and before he was dismissed.

After he had been barred from reenlisting and his civilian employment had been terminated, Holdiness filed this suit, relying on 42 U.S.C. §§ 1983, 1985; the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.; and Louisiana state law, La.Civ.Code Ann. art. 2315 (West 1979). Holdiness asserted that the defendants' unconstitutional actions were the proximate cause of his father's death. He sought $1,000,000 in damages for loss of past and future wages, pain and suffering, and loss of his father's affection and companionship. In his response to the defendant's motion to dismiss, Holdiness also alleged violations of his federal constitutional rights, citing *Bi-vens v. Six Unknown Named Agents of Federal Bureau of Narcotics.*[2]

Holdiness appeals only the dismissal of those defendants who were considered federal employees by the district court, Dean, his immediate supervisor; Captain Phillip L. Arthur, a civilian technician supervisor; Colonel Gerard A.M. Mumphrey, the Guard's Director of Manpower Management; and Major General A.M. Stroud, Jr., the officer in charge of civilian technicians and the man who had responded to the Louisiana State Senator's intercession by writing the Governor of Louisiana. As we have noted, Holdiness has invoked a variety of constitutional and statutory bases for relief, casting a tangled net of claims. Separating their strands, we examine each individually to determine whether any is strong enough to retain the defendants.

## II. Status of the National Guard

The constitution empowers Congress "to provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of Training the Militia according to the discipline prescribed by Congress."[3]

As the Supreme Court related in *Maryland v. United States:*

> From the days of the Minutemen of Lexington and Concord until just before World War I, the various militias embodied the concept of a citizen army, but lacked the equipment and training necessary for their use as an integral part of the reserve force of the United States Armed Forces.[4]

The National Defense Act of 1916 materially altered the status of the militias by constituting them the National Guard. Pursuant to the power vested in Congress

---

1. 32 U.S.C. § 709(e)(1); *Tennessee v. Dunlap,* 426 U.S. 312, 313, 96 S.Ct. 2099, 2100, 48 L.Ed.2d 660 (1976).

2. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3. U.S. Const. art. 1, § 8, cl. 15, 16.

4. 381 U.S. 41, 46, 85 S.Ct. 1293, 1296, 14 L.Ed.2d 205, *vacated on other grounds,* 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965).

by the Constitution, the Guard was to be uniformed, equipped, and trained in much the same way as the regular army, subject to federal standards and capable of being "federalized" soldiers. Congress also authorized the allocation of federal equipment to the Guard, and provided federal compensation for members of the Guard, supplementing any state emoluments. The Guard is thus the successor to the State militias, but it is now a hybrid state-federal organization,[5] for the Governor remains in charge of the National Guard in each state except when the Guard is called into active federal service. In most states the Governor administers the Guard through the State Adjutant General, who was required by the 1916 Act to report periodically to the National Guard Bureau, a federal organization, on the Guard's reserve status.

"The basic structure of the 1916 Act has been preserved to the present day."[6] The National Guard is today, therefore, an integral part of this country's military structure. It is "[a]n essential reserve component of the Armed Forces of the United States, available with regular forces in time of war."[7]

## III. § 1983

Whether Holdiness has stated a claim for which relief might be granted under 42 U.S.C. § 1983 turns on whether he alleges that state action has deprived him of an interest that is constitutionally recognized as life, liberty, or property without due process of law.

### A. State Action

This circuit, like other federal circuits, has several times reviewed the attempts of Guard personnel to invoke judicial aid. The state-national character of the Guard

as well as the requirements of § 1983, which affords relief only for state action, require us to focus separately on two questions: whether the defendants' actions constitute actions of the State of Louisiana, a question distinct from whether Holdiness as a civilian technician is a federal or state employee and whether, as a military member of the Guard, he is in federal or state military service.

■ In *NeSmith v. Fulton*,[8] we held that the Adjutant General of a state is "at least in part a state officer." Relying on *Davis v. Vandiver*,[9] we said that, although the National Guard Technician's Act confers federal status on civilian technicians "while granting administrative authority to *State* officials, headed in each state by the Adjutant General,"[10] by virtue of the hybrid character of the Guard, the Adjutant General is, at least for some purposes, simultaneously a federal agent. A charge that the Adjutant General deprived a member of the Guard of his constitutional or federal statutory rights, therefore, satisfies the state action requirement of § 1983.[11]

■ In addition to suing the Adjutant General, NeSmith also sued various Guard members, including a captain in his Air National Guard squadron, the Personnel Officer for the Guard, the Commanding Officer of his squadron, and the chief of central base administration of his fighter wing. In *NeSmith* we held that the actions of such officers must be considered state action for at least some purposes, because "in removing NeSmith from his civilian technician position, the defendant adjutant general *and the other defendants, as his agents,* acted sufficiently un-

---

5. *New Jersey Air Nat'l Guard v. Federal Labor Relations Authority,* 677 F.2d 276, 278 (3d Cir. 1982).

6. *Maryland v. United States,* 381 U.S. at 47, 85 S.Ct. at 1297.

7. *Gilligan v. Morgan,* 413 U.S. 1, 7, 93 S.Ct. 2440, 2444, 37 L.Ed.2d 407 (1973).

8. 615 F.2d 196 (5th Cir.1980).

9. 494 F.2d 830, 832 (5th Cir.1974).

10. *NeSmith v. Fulton,* 615 F.2d at 199 (quoting *Davis v. Vandiver,* 494 F.2d at 832 (emphasis in original)).

11. *Id.,* 615 F.2d at 200.

der color of state law for purposes of Section 1983." [12]

The district court, therefore, was in error in holding that, as a matter of law, the four federal defendants were not amenable to suit under § 1983 because they were federal employees.

## B. Justiciability

■ Whether § 1983 may be invoked for alleged injuries suffered by military personnel as a result of actions taken by their military superiors, also presents a question of the proper scope of judicial inquiry. Because Guard members serve in a branch of the federal military service, cases considering persons in the regular military services are relevant to this inquiry. In *Mindes v. Seaman*,[13] decided in 1971, we held that the federal courts have jurisdiction to consider a complaint seeking declaratory and injunctive relief by an Air Force officer who sought to avoid an adverse Officer Effectiveness Report after he had unsuccessfully exhausted all available intraservice procedures including application to the Air Force Board for Correction of Military Records. In the interests of good "judicial husbandry," we then reviewed his charges in the complaint and set forth, for the proceedings on remand, "a somewhat detailed analysis of when internal miliary affairs should be subjected to court relief." [14]

Mindes had alleged, inter alia, that the proceedings against him violated due process but we did not further evaluate these charges and expressed no opinion about whether his specific claims would, if proved, constitute a denial of a constitutional right, saying only that his "allegations, in toto, are sufficient to withstand a motion to dismiss at the pleading stage." We did, however, set forth factors for the district court to consider in deciding when federal court should review a decision by the "military establishment." [15] We wrote: [16]

A district court faced with a sufficient allegation [of deprivation of a constitutional right] must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters. In making that examination, such of the following factors as are present must be weighed (although not necessarily in the order listed).

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values—compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review.

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

The *Mindes* opinion considered the availability of administrative remedies relevant in determining whether federal judicial portals were open to such suits, although, of course, the Supreme Court's ruling in *Pat-*

---

12. *Id.* (citations omitted) (emphasis added).

13. 453 F.2d 197 (5th Cir.1971).

14. *Id.*, 453 F.2d at 199.

15. *See also West v. Brown*, 558 F.2d 757 (5th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978).

16. *Mindes*, 453 F.2d at 201.

*sy v. Florida Board of Regents* [17] has since established that exhaustion of administrative remedies is not a prerequisite to a § 1983 action. In *Penagaricano v. Llenza,* [18] the First Circuit noted the difference between an inquiry into whether availability of administrative remedies affects the availability of access to federal court and an inquiry into whether exhaustion of such remedies is generally a prerequisite to § 1983 actions. It, however, did not resolve the issue whether *Patsy* bars consideration of the availability of administrative remedies for purposes of determining when a court should inquire into military matters because it found that the plaintiffs had not been denied a constitutionally protected interest. The Ninth Circuit has followed the *Mindes* test without distinguishing between different aspects of the exhaustion question [19] and left redress in the hands of the military service. Like Mindes, Holdiness has access to administrative remedies. Unlike Mindes, he has failed to resort to them.

In 1983, more than a decade after we decided *Mindes,* the Supreme Court first considered whether a federal judicial forum was available to adjudicate claims arising from intraservice injuries in the regular military service. In *Chappell v. Wallace,* [20] the Court held that enlisted military personnel may not pursue *Bivens*-type suits to recover damages for the violations of their constitutional right to equal protection of the law as a result of discrimination against them because of their race. [21]

This circuit applied *Chappell* to the due process and equal protection claims of Guard members in *Crawford v. Texas Army National Guard,* [22] holding that § 1983 does not afford a cause of action against Guard personnel for their service-connected actions. This decision is in accord with decisions of the Third, [23] Eighth, [24] and Tenth Circuits. [25] We note that in *Penagaricano v. Llenzo,* [26] the First Circuit held that *Chappell* is not directly controlling but, when analyzed under the *Mindes* tests, such claims are "nonjusticiable." In *Mollnow v. Carlton,* [27] the Ninth Circuit, applying the rationale of *Chappell,* held that § 1985 does not afford military subordinates a remedy against military superiors.

Accordingly, we follow *Crawford* in applying the *Chappell* rule to Guard members and, using the tests in *Chappell* and *Mindes,* hold that the remedy sought by Holdiness would be so disruptive to military service that the claim should not be entertained by the federal courts. We affirm the district court ruling that the complaint does not state a claim for which relief can be granted under § 1983.

### C. Liberty or Property

For completeness we note another deficency in the complaint. Section 1983 protects only against a deprivation of rights secured by the Constitution and laws of the United States. State action in causing the denial of reenlistment to a Guard member and the consequent termination of

---

**17.** 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

**18.** 747 F.2d 55 (1st Cir.1984).

**19.** *Mollnow v. Carlton,* 716 F.2d 627, 629–30 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

**20.** 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

**21.** *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**22.** 794 F.2d 1034 (5th Cir.1986).

**23.** *Jorden v. National Guard Bureau,* 799 F.2d 99, 108 (3d Cir.1986).

**24.** *Brown v. United States,* 739 F.2d 362, 366–67 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985).

**25.** *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985).

**26.** 747 F.2d 55, 59–61 (1st Cir.1984).

**27.** 716 F.2d 627, 629–30 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

his employment as a civilian technician does not necessarily constitute the deprivation of a constitutionally protected liberty or property interest, for the constitutional guarantee does not protect against every injury.[28]

In *Walker v. Alexander*,[29] we considered whether a Guard officer, who was also employed as a civilian technician, possessed a constitutionally protected property right to be retained in active military service in the Guard, a status on which his civilian employment was contingent. Without applying the *Mindes* tests, we held that the Guard member's asserted interest was not a property right in the constitutional sense and that his civilian-technician status did not "change the quality of the right or the expectancy of the officer to continue in his position for purposes of demonstrating the existence of a property right." [30]

■ Holdiness did not lose his position as a technician until his enlistment as a military member of the Guard expired. He did not have a property or liberty interest protected by the due process clause in continued military service in the National Guard,[31] nor did he have a constitutionally protected right to re-enlist.[32] Thus, he has failed to allege injury to a constitutionally protected liberty or property interest when his status as a military member of the Guard was terminated. Because Congress has mandated that a technician be discharged if his military enlistment expires,

Holdiness has also failed to state a § 1983 claim regarding his termination as a civilian technician.

## IV. Section 1985

42 U.S.C. § 1985 accords a cause of action to any person injured as a result of a conspiracy to interfere with the civil rights described in the Act: Subsection 1 relates to a conspiracy to prevent a public official from performing his duty; Subsection 2 relates to a conspiracy to obstruct justice or to intimidate a party, a witness, or a juror; and Subsection 3 concerns the acts of two or more persons in conspiring to, or in going in disguise to, deprive any person of certain rights. Both subsections clause 2 of subsection 2 and 3 relate only to actions motivated by racial or some other type of invidious, class-based discrimination.[33]

■ Plaintiffs who assert claims under 42 U.S.C. § 1983 and other civil rights statutes, such as § 1985, must plead the operative facts upon which their claim is based. Mere conclusory allegations are insufficient.[34] Equal specificity is required when a charge of conspiracy is made.[35]

■ Holdiness' complaint fails to satisfy this pleading requirement sufficiently to assert a claim under any of the subsections of § 1985. The heart of the cause of action accorded by § 1985 is a conspiracy to inter-

---

**28.** *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**29.** 569 F.2d 291 (5th Cir.1978).

**30.** *Id.,* 569 F.2d at 293.

**31.** *Walker v. Alexander,* 569 F.2d at 294.

**32.** *Gant v. Binder,* 596 F.Supp. 757, 766–67 (D.Neb.1984), *aff'd,* 766 F.2d 358 (8th Cir.1985); *see also West v. Brown,* 558 F.2d 757, 760 (5th Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978).

**33.** *Kush v. Rutledge,* 460 U.S. 719, 725–26, 103 S.Ct. 1483, 1487–88, 75 L.Ed.2d 413 (1983); *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 344–

47 (5th Cir.), *cert. denied,* 454 U.S.1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *Rayborn v. Miss. State Bd. of Dental Examiners,* 776 F.2d 530, 532 (5th Cir.1985).

**34.** *See, e.g., Jewell v. City of Covington,* 425 F.2d 459 (5th Cir.), *cert. denied,* 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970); *Hobson v. Wilson,* 737 F.2d 1, 30 (D.C.Cir.1984); *Ostrer v. Avonwald,* 567 F.2d 551, 553 (2d Cir.1977); *Hoffman v. Halden,* 268 F.2d 280, 295–96 (9th Cir.1959).

**35.** *Yglesias v. Gulf Stream Park Racing Ass'n,* 201 F.2d 817, 818 (5th Cir.), *cert. denied,* 345 U.S. 993, 73 S.Ct. 1132, 97 L.Ed. 1400 (1953); *Powell v. Workmen's Compensation Bd. of State of New York,* 327 F.2d 131, 137 (2d Cir.1964); *Hoffman v. Halden, supra.*

fere with a person's civil rights.[36] The essence of a conspiracy is an understanding or agreement between the conspirators. Holdiness does not allege that the defendants conspired to commit any of the alleged wrongful acts nor does he allege any facts from which such a conspiracy might be inferred.[37]

■ Considering each subsection of § 1985 separately, we note that, apart from failure to charge a conspiracy, the complaint does not allege facts sufficient to charge a violation of subsection 1, an effort to prevent a public official from performing his official duties. It alleges only that the defendants acted to deprive Holdiness of his constitutional rights.[38] Holdiness' complaint is also insufficient to state a claim under subsections 2 and 3 for it alleges neither a conspiracy nor class-based animus. It alleges only that the defendants' actions were motivated by Dean's dislike of his father and their desire to punish an insubordinate employee.

The § 1985 claim was therefore properly dismissed.

## V. Federal Torts Claims Act

■ The Federal Torts Claims Act was amended in 1981 to extend protection to "members of the National Guard while engaged in training or duty under section 316, 502, 503, 504, or 505 of Title 32." [39] This provision makes the government liable for the conduct of civilian technicians employed by the Guard.[40] The only proper defendant in a suit under the Act, however, is the United States.[41] The Federal Torts Act claim against the individual defendants was, therefore, properly dismissed.

## VI. *Bivens v. Six Unknown Named Agents*

■ The Supreme Court in *Bivens v. Six Unknown Named Agents* [42] found sanction for a damage suit against federal officials whose actions violate an individual's constitutional rights even though Congress had not expressly authorized such suits. The Court has, however, consistently cautioned that this implied remedy is not available in the presence of "special factors counselling hesitation." [43] In *Chappell*,[44] the Court found that "the need for special regulations in relation to military discipline, and the consequent need and justification of a special and exclusive system of military justice" mitigated against permitting enlisted military personnel to maintain a damage suit against a superior officer for alleged violation of their constitutional rights in failing to assure them desirable duties, threatening them, giving them low performance evaluations, and denying them equal protection of the laws by imposing unusually severe penalties on them because of their race.

The Eleventh Circuit in *Stanley v. United States*,[45] did not read *Chappell* as establishing a *per se rule* prohibiting suits by military personnel against their superiors to recover damages for constitutional viola-

**36.** *Kush,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413.

**37.** *See Zernial v. United States,* 714 F.2d 431, 434–35 (5th Cir.1983).

**38.** *See Lowe v. Letsinger,* 772 F.2d 308, 311 (7th Cir.1985).

**39.** 28 U.S.C. § 2671; *see also Rhodes v. United States,* 760 F.2d 1180, 1183 (11th Cir.1985).

**40.** *See Proprietors Ins. Co. v. United States,* 688 F.2d 687, 688–89 (9th Cir.1982).

**41.** *Mars v. Hanberry,* 752 F.2d 254, 255–56 (6th Cir.1985); *Woods v. United States,* 720 F.2d 1451, 1452 n. 1 (9th Cir.1983); *Anderson v. Bailar,* 459 F.Supp. 792, 793 (M.D.Fla.1978); *aff'd,* 619 F.2d 81 (5th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980).

**42.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**43.** *Id.,* 403 U.S. at 396, 91 S.Ct. at 2005. *See also Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); *Chappell v. Wallace,* 462 U.S. 296, 298, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983).

**44.** *Supra.*

**45.** 786 F.2d 1490 (11th Cir.1986).

tions. The opinion in *Chappell* apparently disavows such an intention for it states:

> This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service.[46]

\* \* \* \* \* \*

> Civilian courts must at the very least hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers [because] that relationship is at the heart of the necessarily unique structure of the military establishment.[47]

The majority of courts to consider the question, however, have reached the opposite conclusion.[48]

It is unnecessary for the purpose of deciding this case for us to express any opinion concerning the *Stanley* interpretation. Like Chappell's contentions, Holdiness' claims present a situation in which military decision making "would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command."[49] Moreover, like the plaintiffs in *Chappell*, and unlike those in *Stanley*, Holdiness may resort to intramilitary administrative procedures to redress his complaints.[50]

The district court therefore properly dismissed Holdiness' *Bivens* claims.

### VII. State Law Claims

■ Judicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of claims founded in § 1985, § 1983, and *Bivens*. Absent express Congressional provision for such judicial intervention, the rationale of *Chappell* and *Crawford* bars Holdiness' state law tort claims.[51] These would, of course, fail in any event upon dismissal of the federal claims to which they are pendent.

### VIII. Administrative Remedy

As we have previously noted, Holdiness is not left without any remedy if his rights indeed have been violated. Unlike the plaintiff in *Mindes*,[52] he has not availed himself of his right to review from the Army Board for the Correction of Military Records. The Board, established by Congress pursuant to 10 U.S.C. § 1552, has the authority to correct any error or injustice in a military record. It has power to award backpay and other lost benefits [53] although, as a matter of comity and in recognition of the states' role in the Guard,[54] it will not compel reinstatement. Moreover, the Board's decisions are subject to review and may be set aside if they are arbitrary and capricious or are not supported by substantial evidence.[55] This remedy was found sufficient in *Chappell*,[56] for it is the remedy Congress has chosen to provide.[57]

---

**46.** *Chappell*, 462 U.S. at 304, 103 S.Ct. at 2368, 76 L.Ed.2d at 593 (citation omitted).

**47.** *Chappell*, 462 U.S. at 300, 103 S.Ct. at 2366, 76 L.Ed.2d at 591.

**48.** *See Jorden v. National Guard Bureau*, 799 F.2d 99 (3d Cir.1986); *Trerice v. Summons*, 755 F.2d 1081 (4th Cir.1985); *Martelon v. Temple*, 747 F.2d 1348 (10th Cir.1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); *Mollnow v. Carlton*, 716 F.2d 627 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

**49.** *Chappell*, 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.E.2d at 593.

**50.** *See Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980).

**51.** *See Trerice v. Pedersen*, 769 F.2d 1398, 1403–04 (9th Cir.1985) (and cases cited therein); *Trerice v. Summons*, 755 F.2d 1081, 1084–85 (4th Cir.1985).

**52.** *Mindes v. Seaman, supra.*

**53.** *See Navas v. Gonzalez Vales*, 752 F.2d 765, 770 (1st Cir.1985).

**54.** *Jorden*, 799 F.2d at 102 n. 5.

**55.** *Geyen v. Marsh*, 775 F.2d 1303, 1306 (5th Cir.1985).

**56.** 462 U.S. at 302–03, 103 S.Ct. at 2367; *see also Crawford*, 794 F.2d at 1036.

**57.** *See also Crawford*, 794 F.2d at 1036.

The judgment of the district court is therefore amended to recognize that dismissal of the suit is to be without prejudice to Holdiness' right to seek judicial review by the Army Board for the Correction of Military Records, and, as thus modified, is affirmed.