Frederick A. NEWTH, Appellant,

v.

ADJUTANT GENERAL'S DEPARTMENT OF TEXAS and Executive Department of the State of Texas, Appellees.

No. 3–93–516–CV.

Court of Appeals of Texas, Austin.

Aug. 17, 1994.

Rehearing Overruled Oct. 12, 1994.

Frank B. Suhr, New Braunfels, David G. Pfeuffer, Brazle & Pfeuffer, L.L.P., New Braunfels, for appellant.

Dan Morales, Atty. Gen., Ann. F. MacMurray, Asst. Atty. Gen., Austin, for appellees.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal requires us to decide whether an employee and member of the Texas National Guard [1] may maintain an action against

1. The term "Texas National Guard" refers to the Texas Army National Guard and the Texas Air

the Adjutant General's Department and the Executive Department of the State of Texas pursuant to Tex.Gov't Code Ann. §§ 554.001–.009 (West 1994) (the "Whistleblower Act").[2] The trial court dismissed this cause without prejudice on a plea to the jurisdiction, leaving Newth free to pursue his administrative remedies through the military. We will affirm.

## BACKGROUND

In 1992, Frederick A. Newth was a captain in the Texas Army National Guard, serving as a specialist in the Directorate of Plans, Operations and Training. While on duty, Newth observed activities he considered illegal and reported them to the Federal Bureau of Investigation and to Army Intelligence. He told these agencies about documents that could be used to prosecute Colonel Richard Brito, third in command of the Texas National Guard, and others for perjury to a federal grand jury. Newth also reported facts he believed could link Colonel Brito and others to illegal activities involving drug smuggling. Additionally, Newth testified in response to an inquiry from the Texas Army National Guard Inspector General regarding an investigation of a superior officer.

In the fall of 1992, Newth was passed over for promotion although he was at the top of the promotion list. In February 1993, Newth decided he would not advance as a full-time member of the Texas Army National Guard. He voluntarily resigned from active duty status and sought a part-time position that would have made him eligible for a promotion to the rank of major. The Adjutant General and Chief of Staff had already signed the paperwork for this promotion when Newth was informed the position he applied for had been eliminated, his promotion denied, and his former position eliminated. In March 1993, when Newth sought an assignment, he was assigned out of his area of expertise to the position of Transportation Officer under the Directorate of Logistics.

Newth sued the Adjutant General's Department and the Executive Department of the State of Texas under the Whistleblower Act, complaining that the failure to promote and the reassignment out of his area of expertise constituted retaliation and discrimination in response to his whistleblowing activities. The trial court granted a plea to the jurisdiction, without prejudice, allowing Newth to pursue his administrative remedies through the military, having concluded that: (1) the Texas National Guard is not a "state governmental body" under the Whistleblower Act;[3] (2) the Texas Legislature did not intend the Whistleblower Act to authorize interference in the federal-state military command structure; and (3) tort claims concerning military personnel matters in a state national guard are nonjusticiable under federal law. In four points of error, Newth contends the trial court erred in dismissing the cause.

## DISCUSSION

■ Today we follow the Supreme Court and the federal circuits and hold that claims brought by military personnel under state statutes for injuries arising from or in the course of activity incident to military service are nonjusticiable. While declining to hold that military personnel are barred from all redress in civilian courts for wrongs suffered in the course of military service, the Supreme Court has nevertheless mandated that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers." *Chappell v. Wallace*, 462 U.S. 296, 300, 304, 103 S.Ct. 2362, 2366, 2367, 76 L.Ed.2d 586 (1983). It is

National Guard. Tex.Gov't Code Ann. § 431.001 (West 1990).

2. All citations in this opinion are to the current Government Code rather than former Tex.Rev. Civ.Stat.Ann. art. 6252–16a because the recent recodification did not substantively change the law. Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex.Gen.Laws 583, 986.

3. The Texas National Guard is not a party to this lawsuit. Neither is the Adjutant General's Department under the control of the Texas National Guard. *See* Tex.Gov't Code Ann. §§ 431.001, .022 (West 1990). However, because dismissal was proper for other grounds set forth in the plea to the jurisdiction, we do not address this error in the order dismissing the cause.

appropriate for civilian courts to defer to military judgment for two reasons. First, the Supreme Court has determined that it is not proper for a civilian court to second-guess military decisions. *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665 (1977). Second, interference by civilian courts in military matters may impair essential military discipline. *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2366.

In *Feres v. United States,* the Supreme Court initiated the policy of deferring to military judgment and held that a soldier may not recover under the Federal Tort Claims Act for injuries that "arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The Supreme Court later explained that the holding in *Feres* was premised upon concern for the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

In *Chappell,* five enlisted men serving in the United States Navy sued their superior officers alleging that, because they were minorities, their officers failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual severity. *Chappell,* 462 U.S. at 297, 103 S.Ct. at 2364. The Supreme Court expanded the *Feres* doctrine, holding that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* at 304, 103 S.Ct. at 2367.[4]

Subsequently, some federal courts applied *Chappell* narrowly, restricting the holding to its specific facts, while others broadly applied its reasoning. *See Jorden v. National Guard Bureau,* 799 F.2d 99, 107 (3rd Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987) (providing a survey of cases applying *Chappell*). In *United States v. Stanley,* the Court granted certiorari specifically to resolve the controversy among the circuits over the proper application of *Chappell* in *Bivens* actions. *See United States v. Stanley,* 483 U.S. 669, 676, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987). In *Stanley,* the Court pointed out that while some of *Chappell*'s language focused explicitly on the officer/subordinate relationship presented in *Feres,* the *Chappell* approach should apply to all activities performed "incident to service," not merely to activities performed within the officer/subordinate relationship. *Id.,* 483 U.S. at 680–81, 107 S.Ct. at 3062–63; *see Wright v. Park,* 5 F.3d 586 (1st Cir.1993).

Before *Stanley,* the Third, Fifth, Eighth, and Tenth Circuits anticipated the Supreme Court's broad application of *Chappell* and held that claims against military personnel brought under 42 U.S.C. section 1983 for alleged violations of subordinates' civil rights are nonjusticiable. *See Holdiness v. Stroud,* 808 F.2d 417, 423 (5th Cir.1987); *Jorden,* 799 F.2d at 108; *Crawford v. Texas Army Nat'l Guard,* 794 F.2d 1034, 1036 (5th Cir.1986); *Brown v. United States,* 739 F.2d 362, 366–67 (8th Cir.1984), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985); *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir. 1984), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985). Similarly, federal circuits applied *Chappell* and held that 42 U.S.C. section 1985 conspiracy claims and 42 U.S.C. section 1981 civil rights claims arising in the military context are nonjusticiable. *See Holdiness,* 808 F.2d at 424–25; *Brown,* 739 F.2d at 369.

Only the First Circuit chose to limit *Chappell* to the context of enlisted personnel suing

---

4. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights, even though Congress had not expressly authorized such suits. However, such a remedy is not available when "special factors counselling hesitation" are present. *See Bush v. Lucas,* 462 U.S. 367, 378, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983); *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

superior officers. *See Penagaricano v. Llenza*, 747 F.2d 55 (1st Cir.1984). The Fifth Circuit expressly refused to follow the First Circuit. *Crawford*, 794 F.2d at 1036. In *Wright*, the First Circuit overruled *Penagaricano* in light of the *Stanley* decision and joined the other federal circuits in broadly applying *Chappell's* reasoning. *Wright*, 5 F.3d at 590–91. Wright, a colonel in the Maine Army National Guard, sued a general and others under 42 U.S.C. sections 1983 and 1985; the federal whistleblower statute, 5 U.S.C. sections 2301–2302; and the state whistleblower statute, alleging he was retaliated against because of his whistleblowing activities.[5] *Id.* at 587. The First Circuit held that the *Stanley* exception to *Bivens* liability is co-extensive with the exception to tort liability in *Feres*, and that claims brought under the federal whistleblower act and 42 U.S.C. sections 1983 and 1985 fall within the same category.

▪ Although this Court is not bound by the decisions of the federal courts of appeals, they are received with respectful consideration. *See Barstow v. State*, 742 S.W.2d 495, 501 n. 2 (Tex.App.—Austin 1987, writ denied). We pay particular attention to the Fifth Circuit. After *Chappell*, but before *Stanley*, the Fifth Circuit twice entertained suits military personnel had filed against their superior officers. In *Crawford v. Texas Army National Guard*, the plaintiffs alleged their constitutional rights had been violated when they were dismissed or put in the inactive reserve in retaliation for reporting criminal activity and discrimination against and mistreatment of minorities in the Texas Army National Guard. *Crawford*, 794 F.2d at 1035. The plaintiffs asserted claims under

the First, Fifth, and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. sections 1983 and 1985(2). *Id.* The court dismissed the claims, reasoning that due process claims and claims brought under sections 1983 and 1985(2) "invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service, which, according to *Chappell*, provide an exclusive remedy subject to review only under the arbitrary and capricious standard." *Id.* at 1036.

In *Holdiness*, an enlisted member and civilian technician in the Louisiana Army National Guard alleged he was prevented from re-enlisting as a military member of the Louisiana Army National Guard in retaliation for having appealed a low performance rating. This resulted in termination of his employment as a civilian technician. *Holdiness*, 808 F.2d at 419. The plaintiff brought a *Bivens* action and claims under the Federal Tort Claims Act, 42 U.S.C. sections 1983 and 1985, and state law. The court affirmed the district court's dismissal of the section 1985 claim for insufficient pleading of operative facts, and affirmed the district court's dismissal of the Federal Tort Claims Act claim because the only proper defendant in a suit under this act, the United States, was not named as a party. *Id.* at 425. With regard to the section 1983 claim, the court stated, "[W]e follow *Crawford* in applying the *Chappell* rule to Guard members and, using the tests in *Chappell* and *Mindes*, hold that the remedy sought by Holdiness would be so disruptive to military service that the claim should not be entertained by the federal courts." *Id.* at 423.[6] The court also held

---

5. In *Wright*, the First Circuit did not address the justiciability of the state whistleblower claim. The parties agreed that issue was moot after the Maine Supreme Judicial Court held the Maine Legislature did not intend for the state whistleblower law to apply to military controversies. *Wright*, 5 F.3d at 587 n. 3; *see Maine Human Rights Comm'n v. Maine Dep't of Defense & Veterans' Servs.*, 627 A.2d 1005 (Me.1993).

6. *See Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). This pre-*Chappell* case set forth several factors to consider when deciding whether a federal court should review a decision by the "military establishment." The factors include:

(1) the nature and strength of the plaintiff's challenge; (2) the potential injury to the plaintiff; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Id.* at 201. However, we decline to apply the *Mindes* factors in light of the Supreme Court's decision in *Stanley* to dismiss *Bivens*-type claims that arise out of or are in the course of activity incident to service, and the First Circuit's abandonment of the *Mindes* approach in favor of the *Chappell/Stanley* approach. *See Stanley*, 483 U.S. at 684, 107 S.Ct. at 3064; *Wright*, 5 F.3d at 590–91.

**360**

that the *Bivens* claims were properly dismissed because they presented a situation in which "military decision-making 'would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.'" *Holdiness*, 808 F.2d at 426 (quoting *Chappell*, 462 U.S. at 304, 103 S.Ct. at 2367). Finally, the Fifth Circuit affirmed the dismissal of the state-law claims, holding that "[j]udicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of claims founded in § 1985, § 1983, and *Bivens*." *Id.* Newth attempts to characterize this final holding as dictum because the state-law claims were pendent to the dismissed federal claims. Dictum or not, we are persuaded that state-law claims would undermine military decision-making as surely as the federal claims held to be nonjusticiable.

In his third point of error, Newth contends the trial court erred in holding that claims concerning military personnel matters in a state national guard are nonjusticiable. Newth attempts to distinguish his case from *Crawford* by arguing that he is an officer, not an enlisted member of the Texas Army National Guard, and that the concern of maintaining discipline is less important when the plaintiff is an officer. However, Newth fails to address the *Stanley* extension of the *Feres* and *Chappell* doctrines to claims that arise out of or are in the course of activity incident to service. *See Stanley*, 483 U.S. at 684, 107 S.Ct. at 3064. The concern for maintaining military discipline and the chain of command does not hinge on whether the disciplinary and decision-making structure of the military is challenged by an officer or by an enlisted member. We conclude that judicial review of a claim for damages based on the Texas Whistleblower Act would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of *Bivens* actions or claims brought under the Federal Tort Claims Act, 42 U.S.C. sections 1983 and 1985, or the federal whistleblower statute. The third point of error is overruled.

## CONCLUSION

We hold that claims under the Texas Whistleblower Act concerning military personnel matters in a state national guard are nonjusticiable, and that the trial court properly dismissed the cause. Having so concluded, we need not address the remaining points of error. We affirm the judgment of the trial court.