Maurice H. UDELL, Plaintiff,

v.

ADJUTANT GENERAL'S DEPARTMENT OF THE STATE OF TEXAS, James T. Dennis, Individually, Henry B. "Hank" Smyth, Individually, Robert W. McDonald, Individually, Robert H. Harmon, Individually, Dan D. Swint, Individually, Patricia C. Hamilton, Individually, and Kenneth D. Knight, Individually, Defendants.

Civ. A. No. H-93-4034.

United States District Court,
S.D. Texas.

March 8, 1995.

Luis Roberto Vera, Jr, Vera & Price, San Antonio, TX, for plaintiff.

Jose Manuel Rangel, Texas Attorney General's Office, Austin, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants' Motion to Dismiss (# 12). Defendants seek dismissal of Plaintiff Maurice H. Udell's ("Udell") claims of wrongful termination, violations of article I §§ 13 and 19 of the Texas Constitution, and common law libel, slander, and defamation. Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that defendants' motion should be granted.

### I. *Background.*

Udell filed this lawsuit on October 22, 1993, alleging: (1) wrongful termination under Tex.Gov't Code § 554.001 *et seq.* (formerly Tex.Rev.Civ.Stat. art. 6252–16a, commonly referred to as the "Texas Whistleblower Act") and Tex.Lab.Code § 21.001 *et seq.* (formerly Tex.Rev.Civ.Stat. art. 5221k, commonly referred to as the "Texas Commission on Human Rights Act"); (2) violations of his state constitutional rights under Texas Constitution Art. I §§ 13 and 19; and (3) common law libel, slander, and defamation. Udell asserts that he was wrongfully subjected to investigations and subsequently forced to resign his military position as Commander of the 147th Fighter Group ("147th") of the Texas Air National Guard ("TANG") at Ellington Air Force Base in Houston, Texas.

Udell contends that after being selected Commander of the 147th, Defendants Henry

B. "Hank" Smyth ("Smyth"), Commander of TANG and Vice President of Bell Helicopters, Inc., and Robert M. McDonald ("McDonald"), the subsequent Commander of TANG, harassed and discriminated against him by organizing numerous inspections, investigations, and deployments in order to coerce him into resigning his post or to gain sufficient information to dismiss or to disqualify him from his position. He further avers that McDonald attempted to sabotage and jeopardize his career by appointing Defendants Robert H. Harmon ("Harmon"), Dan D. Swint ("Swint"), and Patricia Hamilton ("Hamilton"), members of diverse governmental agencies, to assist the Office of Special Investigations in a criminal investigation of Udell. According to Udell, Harmon, Swint, and Hamilton made unfounded allegations and accusations of criminal and fraudulent actions against him during their investigation.

In his complaint, Udell states that he was summoned to Austin, Texas, in early 1985 and ordered to present himself before a board of inquiry called by McDonald in order to determine whether he would remain Commander of the 147th. The board consisted of thirteen people, including McDonald, Adjutant General of the State of Texas James T. Dennis, the Assistant Adjutant General for the Air Division of TANG, and the Deputy Commander of TANG. After the hearing, McDonald ordered Udell to resign from his position. Defendant Kenneth D. Knight ("Knight") was subsequently appointed Commander of the 147th. Thereafter, Knight and McDonald jointly expelled and evicted Udell from Ellington Air Force Base.

Udell was later denied his tenure, and he retired from the military. He appealed to the Air Force Board for Corrections of Military Records ("AFBCMR"), which exonerated him from any wrongdoing. Consequently, the Deputy Secretary of the Air Force ordered that all records of investigations conducted by the Office of Special Investigations while Udell was Commander of the 147th be sequestered.

The defendants presently move to dismiss Udell's claims, contending that they arise from a nonjusticiable military controversy.

## II. *Analysis.*

Courts have repeatedly held that claims brought by military personnel under state statutes for injuries arising from or in the course of activity incident to military service are nonjusticiable. *See United States v. Stanley*, 483 U.S. 669, 676, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983); *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950); *Holdiness v. Stroud*, 808 F.2d 417, 423 (5th Cir.1987); *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1035 (5th Cir.1986); *Newth v. Adjutant General's Dep't of Tex.*, 883 S.W.2d 356, 357 (Tex.App.—Austin 1994, writ denied). In fact, while declining to hold that military personnel are barred from all redress in civilian courts for wrongs suffered in the course of military service, the United States Supreme Court has mandated that civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between military personnel and their superior officers. *Chappell*, 462 U.S. at 300, 304, 103 S.Ct. at 2365–66, 2367–68; *see also Newth*, 883 S.W.2d at 357. In reaching its decision, the Court noted:

> The need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice, is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting.

*Chappell*, 462 U.S. at 300, 103 S.Ct. at 2365.

The Supreme Court initiated the policy of deferring to military judgment in *Feres*, when it held that a soldier may not recover under the Federal Tort Claims Act for injuries that "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159; *see also Chappell*, 462 U.S. at 298–99, 103 S.Ct. at 2364–65; *Newth*, 883 S.W.2d at 358. The Court later explained that its holding in *Feres* was premised upon concern for the "peculiar and special relationship of the soldier to his superi-

ors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

The Supreme Court expanded the *Feres* doctrine in *Chappell,* holding that military personnel may not pursue a *Bivens*-type action for damages against their superior officers to redress constitutional violations. *Chappell,* 462 U.S. at 305, 103 S.Ct. at 2368; *see also Crawford,* 794 F.2d at 1035; *Newth,* 883 S.W.2d at 358. The Supreme Court based its decision to expand the *Feres* doctrine on its determination that it is not proper for a civilian court to second-guess military decisions and that interference by civilian courts in military matters may impair essential military discipline. *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365–66; *see also Wright v. Park,* 5 F.3d 586, 589 (1st Cir. 1993); *Newth,* 883 S.W.2d at 358.

The courts of appeal initially expressed divergent views concerning the application of *Chappell.* Several courts, including the Fifth Circuit, acknowledged the breadth of *Chappell* and held that claims against military personnel brought under 42 U.S.C. § 1983 for alleged violations of subordinates' civil rights are nonjusticiable. *See Holdiness,* 808 F.2d at 423; *Jorden v. National Guard Bureau,* 799 F.2d 99, 108 (3d Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987); *Crawford,* 794 F.2d at 1036; *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); *Brown v. United States,* 739 F.2d 362, 366–67 (8th Cir.1984), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). The First Circuit, however, chose to limit *Chappell* to the context of enlisted personnel suing superior officers. *See Penagaricano v. Llenza,* 747 F.2d 55, 59–60 (1st Cir.1984), *overruled by Wright,* 5 F.3d at 590. While the First Circuit chose to confine *Chappell* and found it to be inapplicable to the issue before the court, it ultimately held the plaintiff's claim for relief to be nonjustici-

able based on an application of the balancing test established by the Fifth Circuit in *Mindes v. Seaman,* 453 F.2d 197, 201–02 (5th Cir.1971). *See Wright,* 5 F.3d at 590 (citing *Penagaricano,* 747 F.2d at 60–61).

When the Fifth Circuit considered the issue of the justiciability of military officer/subordinate claims following the Supreme Court's holding in *Chappell,* it declined to follow the First Circuit's decision in *Penagaricano* and abandoned its prior holding in *Mindes. See Crawford,* 794 F.2d at 1036. Instead, it joined the majority of the circuits in accepting *Chappell* as the definitive rule with respect to the nonjusticiability of military claims in a civilian court. *Id.*

The United States Supreme Court eventually granted certiorari in *United States v. Stanley* in order to resolve the controversy among the circuits over the proper application of *Chappell* in *Bivens* actions. *Stanley,* 483 U.S. at 676, 107 S.Ct. at 3059–60; *see also Wright,* 5 F.3d at 590; *Newth,* 883 S.W.2d at 358. In *Stanley,* the Supreme Court held that while some of the language in *Chappell* focused directly on the officer/subordinate relationship presented in *Feres,* the *Chappell* approach should apply to all activities performed "incident to service," not merely to those restricted to the officer/subordinate relationship. *Stanley,* 483 U.S. at 680–81, 107 S.Ct. at 3062; *see also Newth,* 883 S.W.2d at 358.

Following the Supreme Court's decision in *Stanley,* the First Circuit overruled *Penagaricano* and joined the majority of circuits "in accepting this bright-line rule as the definitive statement on justiciability of civil rights claims in the military context." *Wright,* 5 F.3d at 590–91. The First Circuit concluded that "absent a specific statutory provision to the contrary, there is no principled basis for according state actors sued under 42 U.S.C. § 1983 a different degree of immunity than would be accorded federal actors sued for an identical abridgement of rights under *Bivens.*" *Id.* at 591. The court further noted that civil rights claims brought under the federal whistleblower statute, 5 U.S.C. §§ 2301–02, would likewise be nonjusticiable.

Recently, the Texas Court of Appeals at Austin faced a similar issue with respect to the justiciability of claims brought under the Texas Whistleblower Statute by a member of TANG. *See Newth*, 883 S.W.2d at 360. In *Newth*, the court held that "claims under the Texas Whistleblower Act concerning military personnel matters in a state national guard are nonjusticiable." *Id.* In reaching its decision, the court concluded that "a claim for damages based on the Texas Whistleblower Act would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of *Bivens* actions or claims brought under the Federal Tort Claims Act ... or the federal whistleblower statute." *Id.* Thus, in Texas, civilian courts are prohibited from resolving claims for relief brought by members of the state's militia when those claims relate to actions performed "incident to service." *Id.*

Although the Texas Supreme Court has not addressed the issue, this court is bound by intermediate state appellate decisions where, as here, the court is unconvinced by other persuasive data that the highest court of the state would decide otherwise. *See Ladue v. Chevron*, 920 F.2d 272, 274 (5th Cir.1991) (citing *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). In reaching its decision in *Newth*, the court noted that the Fifth Circuit had twice entertained suits filed by military personnel against their superior officers and dismissed both suits as an unwarranted intrusion into the military personnel structure and an invitation to second-guess military decision-making. *See id.* at 359–60. This court is unaware of any reason not to follow the Texas Court of Appeals' determination that *Chappell* applies to suits brought by TANG personnel. Accordingly, Udell's claims of retaliation under the Texas Whistleblower Act and the Texas Commission on Human Rights Act, common law libel, slander, and defamation, and violations of his state constitutional rights, all of which are incident to his service with TANG, are nonjusticiable in this forum.

Udell was not without a remedy, however, as he could have presented his claims to the AFBCMR. The AFBCMR, composed of civilians appointed by the Secretary of the Air Force, provides aggrieved members of the military a means to correct an error or remove an injustice from their military records, restore lost rank, and recover "for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits ... if, as a result of correcting a record under this section [10 U.S.C. § 1552], the amount is found to be due the claimant on account of his service." 10 U.S.C. § 1552(c) and (d); *see also Chappell*, 462 U.S. at 303, 103 S.Ct. at 2367; *Holdiness*, 808 F.2d at 426. Udell's claims for damages allegedly suffered as a result of the actions of the defendants could have been determined at the outset by the AFBCMR. 10 U.S.C. § 1552(c) and (d); *see also Chappell*, 462 U.S. at 303, 103 S.Ct. at 2367; *Holdiness*, 808 F.2d at 426. If dissatisfied with the result, Udell could then have sought judicial review of the decision made by the AFBCMR. *Chappell*, 462 U.S. at 303, 103 S.Ct. at 2367; *Holdiness*, 808 F.2d at 426. Entertaining Udell's claims at this time, however, would lead to the very type of congressionally uninvited intrusion into military affairs by the judiciary that the Supreme Court denounced in *Stanley*. *See* 483 U.S. at 683, 107 S.Ct. at 3063–64.

### III. *Conclusion.*

Udell's claims for wrongful termination under the Texas Whistleblower Act and the Texas Commission on Human Rights Act, violations of his state constitutional rights under Texas Constitution Art. I §§ 13 and 19, and common law libel, slander, and defamation are nonjusticiable in this forum. Having so concluded, the court need not address the defendants' arguments concerning the remaining grounds for dismissal.

Accordingly, Defendants' Motion to Dismiss is GRANTED.

IT IS SO ORDERED.