OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



May 22, 2000

The Honorable Frank Madla
Chair, Committee on Intergovernmental
  Relations
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0224

Re: Whether a school district may procure "guaranteed program management" services under the Professional Services Procurement Act, chapter 2254 of the Government Code (RQ-0150-JC)

Dear Senator Madla:

You ask whether a school district may procure "guaranteed program management" services as professional services under the Professional Services Procurement Act, chapter 2254 of the Government Code, rather than under subchapter B, chapter 44 of the Education Code. We conclude in the negative. The school district must procure these services under subchapter B of chapter 44 of the Education Code and otherwise comply with the provisions of subchapter B.

As we understand it, the "guaranteed program management" services you ask about include all services, except actual construction services, necessary for the construction, improvement, and renovation of ninety-two percent of the district's school buildings to be funded with school district tax bonds. *See* Letter from Senator Frank Madla, Chair, Texas Senate Committee on Intergovernmental Relations, to Honorable John Cornyn, Texas Attorney General at 2 (Nov. 18, 1999) [hereinafter "Request Letter"]; Notification of Intent to Select Bond Construction Program Management Services, at 1; Proposal for Bond Construction Program Management Services, at II-7, II-8 [hereinafter "Proposal"] (all on file with Opinion Committee). Specifically, they include architectural, engineering, planning, design, scheduling, procurement, risk management-controlled insurance programs, construction management, quality control, project close-out, and operation and management services for the entire building program. Request Letter, *supra*, at 2; Proposal, *supra*, at II-7, II-8. They also include "community outreach" and "minority participation program" services. Request Letter, *supra*, at 2; Proposal, *supra*, at 7.

Apparently, all the guaranteed program management services will be provided by a single corporate entity, the "program manager." *See generally*, Request Letter; Proposal. You tell us that a school district proposes to contract with the program manager "as its sole architect" pursuant to the Professional Services Act, chapter 2254 of the Government Code, rather than chapter 44 of the Education Code because the district "desires professional services versus construction services." Request Letter, *supra*, at 1. The school district in turn will contract for construction services with

one or more contractors pursuant to chapter 44 of the Education Code and assign those contracts to the program manager. *Id.* And the program manager will then guarantee the building program budget and schedule. *Id.*

The Professional Services Procurement Act prohibits a school district from selecting a provider of "professional services" or awarding a contract for professional services on the basis of competitive bidding. TEX. GOV'T CODE ANN. §§ 2254.002, .003(a) (Vernon 2000). "Professional services" means the following services: (1) accounting; (2) architecture; (3) landscape architecture; (4) land surveying; (5) medicine; (6) optometry; (7) professional engineering; (8) real estate appraising; or (9) professional nursing. *Id.* § 2254.002(2). In procuring professional services of an architect, professional engineer, or land surveyor, a school district must: "(1) first select the most highly qualified provider of those services on the basis of demonstrated competence and qualifications; and (2) then attempt to negotiate with that provider a contract at a fair and reasonable price." *Id.* § 2254.004(a). A professional services contract entered in contravention of the Professional Services Procurement Act is "void against public policy." *Id.* § 2254.005. Prior attorney general opinions have concluded that, under the Professional Services Procurement Act, a contract for the construction of public work may not be awarded on the basis of competitive bids if architectural or engineering services comprise part of the contract. *See* Tex. Att'y Gen. Op. No. JM-1189 (1990) at 4, 5; Tex Att'y Gen. LO's-98-060, at 10-11; 96-117, at 1. And a prior attorney general opinion has opined that a school district contract for the services of a construction management consultant was a contract for "professional services" for the purposes of former article 21.901 of the Education Code excepting such services from competitive bidding. *See* Tex. Att'y Gen. Op. No. JM-940 (1988).[1]

The described program management services, of course, include more than architect and engineering services; the statutory procurement procedure under subchapter B of chapter 44 of the Education Code, generally governing school districts' purchases and contracts, is not competitive bidding; subchapter B was adopted by the legislature subsequent to this office's opinion concluding that a school district's construction management consultant services contract was a "professional service" for the purposes for former article 21.901 of the Education Code;[2] and to the extent of any conflict, subchapter B generally prevails over other procurement law.

---

[1]*See also* Tex. Att'y Gen. Op. No. MW-530 (1982) (higher education construction manager services contract within "personal services" exception to competitive bidding requirements of former article 2368a, TEX. REV. CIV. STAT. ANN.); Tex. Att'y Gen. LO-98-60 (municipal construction management contract may be professional or personal service contract).

[2]The Seventy-fourth Legislature repealed section 21.901, transferring its subject matter to section 44.031 of the Education Code and amending its substance. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Gen. Laws 2207, 2498.

Subchapter B of chapter 44 of the Education Code was enacted by the legislature in 1995 and amended in 1997 and 1999.[3] Subchapter B authorizes procurement methods in addition to competitive bidding, including design/build and, as relevant here, construction management for construction and improvement of school facilities. *See* TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2000); *see also* Overton A. Currie, Esq. et al., *The Owner Contemplating Litigation and Its Alternatives: An Overview, in* CONSTRUCTION LITIGATION: REPRESENTING THE OWNER 3, 10 (Robert F. Cushman et al. eds., 2d ed. 1990) (four major construction contractual structures are (1) general contractor with subcontractors (traditional) method, (2) multiple prime contractors structure, (3) various construction management schemes, and (4) design-build contracting). These construction methods incorporate a competitive procurement mechanism consistent with the Professional Services Procurement Act or direct compliance with that act. *See* TEX. EDUC. CODE ANN. §§ 44.036(e), .037(c), .038(e) (Vernon Supp. 2000); *see also* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 3-4 (discussing procurement scheme for design/build). They also include specific restrictions and procedures regarding engineering, architectural, and other ancillary services involved in these construction methods. *See* TEX. EDUC. CODE ANN. §§ 44.037(c), .038(c) (Vernon Supp. 2000). Thus, while subchapter B's purchasing provisions do not generally apply to "professional services," *see id.* § 44.031(f), they do apply to the construction management method for constructing school facilities involving construction manager services, *see id.* §§ 44.031(a)(7), .037, .038.

Although you do not tell us the program manager's contract price, given the magnitude of the school district building program and the breadth of the guaranteed program management services in question, we assume it exceeds $25,000. Section 44.031 regulating a school district's purchasing contracts of $25,000 or more in aggregate yearly value provides as follows:

> (a) Except as provided by this subchapter, all school district contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, *that provides the best value for the district*:
>
> > (1) competitive bidding;
> >
> > (2) competitive sealed proposals;
> >
> > (3) a request for proposals, for services other than construction services;
> >
> > (4) a catalogue purchase . . . ;

---

[3]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2425-26; Act of May 27, 1997, 75th Leg., R.S., ch. 1179, §§ 1-2, 1997 Tex. Gen. Laws 4533; Act of May 28, 1999, 76th Leg., R.S., ch.1225, §§ 1-10, 1999 Tex. Gen. Laws 4257.

> (5) an interlocal contract;
>
> (6) a design/build contract;
>
> (7) *a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager*; or
>
> (8) a job order contract for the minor construction, repair, rehabilitation, or alteration of a facility.
>
> . . . .
>
> (e) To the extent of any conflict, this subchapter prevails over any other law relating to the purchasing of goods or services except a law relating to contracting with historically underutilized businesses.
>
> (f) This section does not apply to a contract for professional services rendered, including services of an architect, attorney, or fiscal agent. A school district may, at its option, contract for professional services rendered by a financial consultant or a technology consultant in the manner provided by Section 2254.003, Government Code, in lieu of the methods provided by this section.

*Id.* § 44.031(a), (e), (f) (emphasis added).

Section 44.031 establishes a bifurcated process for letting a contract, separating the selection of a purchasing method from the ultimate award of a contract using the chosen method. Tex. Att'y Gen. Op. No. JC-0037 (1999) at 2. Under subsection (a) of section 44.031, a district must first evaluate which of the eight listed purchasing methods will provide the best value. *Id.*; *see also* TEX. EDUC. CODE ANN. § 44.035(a) (Vernon Supp. 2000) (school district considering construction contract using method specified in section 44.031(a) must before advertising determine which method provides best value). Then, after the district has chosen the purchasing method it will use, it is to adhere to the procedures applicable to that purchasing method. Tex. Att'y Gen. Op. No. JC-0037 (1999) at 2. Subsequent provisions in subchapter B provide some procedures for procurement and criteria for selecting a vendor with respect to a particular purchasing method. *Id.*; TEX. EDUC. CODE ANN. §§ 44.035-.041 (Vernon Supp. 2000). Sections 44.037 and 44.038 set out specific procedures for the construction manager method for constructing, improving, or repairing a facility, and entering into a contract for the services of a construction manager as well as services of an engineer or architect for the project. *See* TEX. EDUC. CODE ANN. §§ 44.037, .038.

Section 44.037 deals with the construction manager-agent method and a contract for the services of a construction manager-agent. *Id.* § 44.037(a). A construction manager-agent is a "legal

entity that provides consultation to the school district regarding construction, rehabilitation, alteration, or repair of the facility[,]" and "represents the district in a fiduciary capacity." *Id.* § 44.037(b). Before or concurrently with the selection of the manager-agent, a school district is required to select or designate an engineer or architect on the basis of demonstrated competence and qualification pursuant to section 2254.004 of the Government Code (the Professional Services Procurement Act) if the architect or engineer is not a full-time school district employee. *Id.* § 44.037(c). The district's engineer or architect may not serve as the manager-agent unless hired under a separate or concurrent procurement procedure in accordance with subchapter B. *Id.* Finally, the manager-agent must be selected on the basis of demonstrated competence and qualification in the same manner as engineers or architects under section 2254.004 of the Government Code. *Id.* § 44.037(b).

Section 44.038 deals with the construction manager-at-risk method and entering into a contract for the services of a construction manager-at-risk. *Id.* § 44.038(a). A manager-at-risk is a "legal entity that assumes the risk for construction, rehabilitation, alteration, or repair of a facility at the contracted price as a general contractor and provides consultation to the school district regarding construction during and after the design of the facility." *Id.* § 44.038(b). The manager-at-risk itself must be selected in either a one-step or two-step process as set out in subsections (e), (f), and (g) of section 44.038. A school district must prepare a "request for proposal" in the one-step (which may include proposed fees and prices) or a "request for qualifications" in the two-step process (which may include fees and prices only in the second step) and state the selection criteria, which may include "offeror's experience, past performance, safety record, proposed personnel and methodology, and other appropriate factors that demonstrate the capability of the construction manager-at-risk." *Id.* § 44.038(e). The district must select the offeror submitting a proposal "that offers the best value for the district based on the published selection criteria and on its ranking evaluation[,]" and attempt to negotiate with that offeror. *Id.* § 44.038(g). Again, a school district must before or concurrently with the selection of the manager-at-risk select or designate an engineer or architect, and the engineer or architect, if not a full-time school district employee, must be selected in accordance with section 2254.004 of the Government Code. *Id.* § 44.038(c). Significantly, the manager-at-risk may not serve as the district's architect, engineer, or manager-agent. *Id.* Moreover, the district must provide or contract separately "for inspection services, the testing of construction materials engineering, and the verification testing services necessary for acceptance and facility by the district[,]" in accordance with section 2254.004 of the Government Code. *Id.* § 44.038(d).

In sum, section 44.031 establishes the permissible purchasing methods for contracts, excepting contracts for produce, fuel, or professional services subject to the Professional Services Procurement Act, over $25,000 in aggregate yearly value. Tex. Att'y Gen. Op. No. JC-205 (2000) at 9. The school district in question is limited to one of the permissible methods. *See id.* at 10 (because designated broker of record not authorized by section 44.031 and 44.033, junior college district may not use broker to purchase insurance). Once it has chosen a method, it must comply with the procedures applicable to that method. The method described to us appears closest to the

construction manager method under subsection (a)(7) of section 44.031 involving the services of a construction manager-at-risk as described in section 44.038(a).

In addition to architect and engineering services, the program manager will provide "construction management" services. *See* Request Letter; Proposal. In fact, most of the other services that you tell us the program manager will provide—planning, design, scheduling, procurement, risk management-controlled insurance programs, quality control, project close-out, and operation and management services for the entire building program—fall under or are variations of the services provided by a construction manager. *See* Richard D. Conner, *Contracting for Construction Management Services, in* 3 LEGAL HANDBOOK FOR ARCHITECTS, ENGINEERS AND CONTRACTORS 141, 142 (Albert Dib ed., 1987) ("The construction management ["CM"] delivery system is a team approach with project planning, design, and construction being treated as integrated tasks. Typically, the CM works with the owner and design professional from the beginning of design until project completion; his responsibilities include engineering design review, constructability considerations, contracting strategies, and project control."); *id.* at 143-44 (describing construction manager tasks and functions during predesign, design, and construction phases). Additionally, the program manager upon or after assignment of the construction contracts will guarantee the project's schedule and budget. This guarantee appears to be simply a variation on the guaranteed maximum price contract with a construction manager used in the construction industry and referred to as a construction manager-at-risk contracting method. *Id.* at 146-47.

If the school district you ask about has determined that the construction manager-at-risk method provides the best value to the school district, *see* TEX. EDUC. CODE ANN. §§ 44.031(a), .035(a) (Vernon Supp. 2000), it must comply with the requirements of section 44.038 in using that method and contracting for the services of a construction manager-at-risk. *See id.* § 44.038(a); *Cole v. Texas Army Nat'l Guard*, 909 S.W.2d 535, 539 (Tex. App.–Austin 1995, writ denied) ("'[W]here a [statutory] power is granted, and the method of its exercise prescribed, the prescribed method excludes all others, and must be followed.'") (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105 (Tex. 1923)). Under that provision, the construction manager-at-risk must be selected according to the procedures set forth in subsections (e), (f), and (g) of section 44.038. Architect and engineering services must be obtained separately from the construction manager-at-risk services pursuant to the Professional Services Procurement Act, chapter 2254 of the Government Code. Accordingly, the school district may not under the Professional Services Procurement Act contract for "guaranteed program services" that include both construction manager-at-risk and architect and engineering services to be rendered by a single "program manager."

Sections 44.031 and 44.038 of the Education Code prevail over Attorney General Opinion JM-940 to the extent the opinion is inconsistent with these statutes. Accordingly, Attorney General Opinion JM-940 (1988) is superseded by statute.

## S U M M A R Y

A school district may not under the Professional Services Procurement Act contract for "guaranteed program services" that include both construction manager-at-risk and architect and engineering services to be rendered by a single "program manager." Attorney General Opinion JM-940 (1988) is superseded by statute.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee