THE STATE v. J. H. SPARKS.

An illegal act cannot be justified by an order from superior authority, no matter how high the source from which such order emanates.

Military officers are bound to obey all legal orders of their commanders; but there is nothing better settled, as well by the military as the civil law, than that neither officers nor soldiers are bound to obey any illegal order of their superior officers. On the contrary, it is their duty to disobey such orders.

The orders of a military commander to his subordinate furnish to the latter no justification for his forcible interference with the jurisdiction and disregard of the lawful authority of a civil court.

But, although a subordinate military officer must not obey an unlawful order of his superior in command, yet, as he acts at his peril in disobeying such an order, it should be held greatly to extenuate the offence committed by the subordinate in the execution of it.

Under such circumstances, the superior officer who commands the unlawful act, becomes the principal offender, and when implicated in this manner, such officer, although not in the first instance brought before the court, will, it seems, be required to purge himself of the contempt.

Original attachment for contempt. Tried before the Supreme Court.

The facts are sufficiently stated in the opinion.

*J. H. Sparks, in propria persona.*

MOORE, J.—The present proceeding originated in the caption by the defendant Sparks, by means of the military force subject

to his orders, as the commandant of the post at the city of Austin, from the sheriff of Travis county, of Richard R. Peebles, D. J. Baldwin, O. F. Zinke, Reinhart Hildebrand and Ernest Seeliger, who were in his custody by the order of this court, pending the hearing by it of a writ of *habeas corpus.*

For the better understanding of the present case, it is necessary for us to state briefly some of the facts connected with the proceeding on the *habeas corpus.* On the 14th day of March, A. D. 1864, on the return of the writ previously issued by it, the above named parties were brought before this court. And at the same time a return or answer to the writ was made by Lieut. Thomas E. Sneed, who stated that said prisoners were in his custody, at the service of the writ, as commander of the post at San Antonio; that they were confined by order of Major Gen. J. Bankhead Magruder, commander of the military district of Texas, New Mexico and Arizona, on the charge of treason and conspiracy against the government of the Confederate States.

The court deemed it proper that Major Gen. Magruder should be informed of the issuance of the writ, and the answer which had been made to it, and, as he appeared from it to be the real respondent, that an opportunity should be afforded him of making such answer as he believed necessary for the proper disposal of the case. For this purpose, Charles L. Robards and Spencer Ford, esquires, two of the attorneys of this court, were appointed to represent the respondent in the writ, and cause the action taken by the court to be communicated to Major Gen. Magruder, and the case, at their instance, was continued until the 21st day of the month. At the same time the court ordered, pending the proceedings in the case, the prisoners into the custody of the sheriff of Travis county, who is the ministerial officer of this court, to be kept by him, subject to its control, under proper guard. On the day to which the case had been postponed, Horace Cone, Esq., an officer of the Confederate States, and also an attorney of this court, appeared on behalf of Major Gen. Magruder, and filed the answer of that officer, which states, in substance, that the applicants for the writ were arrested and held by his order, as com-

mander of this military district, upon charges of treason and conspiracy against the Confederate States.

On the application of the counsel for the respondent, the case was again continued by the court until the 25th day of the month. On this day, all the parties being before the court, the respondent, Major Gen. Magruder, (for such the facts, as well as his answer, show to be his true position,) by his counsel, and the prisoners in person, attended by their counsel, a motion was submitted to the court by the counsel for the respondent, that the court should remand the prisoners to the custody of the military authorities. This motion was accompanied by an affidavit of the defendant, Major J. H. Sparks, stating, in substance, that the prisoners before the court, who were arrested by order of Major Gen. Magruder, have been ordered by Lieut. Gen. Smith, commanding the Trans-Mississippi Department, to be detained as prisoners under the provisions of the recent act of Congress suspending the writ of *habeas corpus*, which order having been communicated to him by Major Gen. Magruder, he was required to execute. There was, also, filed with the motion a letter from Major Sparks to the court, stating substantially the same facts, and requesting the delivery of the prisoners to him by the court, with as little delay as possible. The motion was also accompanied by a letter to Mr. Cone by Edmund P. Turner, A. A. G., stating that he was instructed by Major Gen. Magruder to say, " that he wishes you to represent to the honorable judges of the Supreme Court, now in session in Austin city, that in directing the commanding officer at Austin to detain the prisoners who are before the court, and to remove them to Houston, no disrespect or discourtesy is intended; but that he has acted under the law of Congress, and in accordance with the Lieutenant General commanding the department." On the next day, an amendment of the motion was filed, accompanied by an affidavit of Major Guy M. Bryan, of Lieut. Gen. Smith's staff, but this has, properly, no connection with the matter now before the court.

On the presentation of this motion and the accompanying papers, the court stated, if it was desired, time would be given to examine and consider the question raised by the motion, and the

counsel for the applicants asking that the case might be continued for the purpose until the next day, and no objection being made by the counsel of the respondent, the further consideration of the case was adjourned by the court until Saturday, the 26th of the month, and the prisoners in the mean time again passed into the hands of the sheriff to abide the further action of the court. On the same day, however, and shortly after the adjournment of the court, as was shown by the affidavit of the sheriff filed in this court, the prisoners were forcibly wrested from him by a detachment of armed soldiers, acting under the command and in obedience to the order of the defendant, Maj. Sparks. Immediately upon the filing of this affidavit, writs were issued by the court to said sheriff, commanding him, without delay, to take said prisoners again into his possession, and also to attach said Sparks, and have him before the court to answer for the contempt committed against it by his wrongful and forcible infringement of its authority, in taking said prisoners out of its custody and from under its control. These writs were both duly executed, and on the next day the defendant, Sparks, filed an answer to the attachment in which he states in substance, that he had received an order from Maj. Gen. Magruder, stating that he had been ordered by Lieut. Gen. Smith, commanding the Trans-Mississippi Department, to detain as prisoners the persons referred to as in charge of the sheriff; and having previously received orders from said Maj. Gen. Magruder, to place the escape of said prisoners beyond a doubt, by placing a sufficient guard over them, and having once furnished a guard which was rejected by the sheriff, and being satisfied that the prisoners were not fully guarded by the sheriff, and feeling, under the orders of the officers having the right to order him, that he was held by them responsible for the safety and protection of said prisoners, and being of the opinion that they were then constructively in the possession of the military, and being ordered to disregard the then existing writ of *habeas corpus*, or any writ which might subsequently be issued, and having, designing and meaning no contempt of the court, but a desire to discharge his duty as an officer in obedience to orders, and having first requested the court to remand the prisoners to the military authorities through him, their then

representative, and the court having declined to act on his request, but taking it under advisement until the next day, he felt it his duty to act as he had done in taking the prisoners.

Attached to, and forming a part of the defendant's answer, are the following extracts from the orders received by him from Maj. Gen. Magruder:

"That as congress has passed an act suspending the writ of *habeas corpus* in the case of such persons as may be designated by his Excellency, the President, the Hon. Secretary of War, and the Lieut. General commanding the Trans-Mississippi Department, and the following named persons, to wit: Dr. Peebles, Messrs. Baldwin, Zinke and Hildebrand, having been ordered by Lieut. Gen. Smith, commanding Trans-Mississippi Department, to be detained as prisoners," &c.

"No. 2. You will yourself disregard the present writ of *habeas corpus*, or any writ which may subsequently be issued."

"HEADQUARTERS OF TEXAS, &c.
"Houston, Texas, March 19th, 1864.
"*To the commanding officer at Austin :*

"SIR: I am instructed by Maj. Gen. Magruder to direct that you furnish such guards as may be necessary to place the escape of the political prisoners beyond a doubt, and to escort them where the commanding General may wish.

"I am, Sir, very respectfully,
"Your ob't serv't,
"EDMOND P. TURNER, A. A. G."

The facts which we have recited show that the prisoners heretofore named were in the custody of the court, acting through its ministerial officer, for their judicial action in a matter with which they are charged by the constitution and laws of the State. It certainly needs neither argument or authority to show that there is no officer or tribunal, civil or military, known to the law of the land, that could, without a violation of law and a contempt of this court, forcibly take from under its control, and without its consent, said prisoners, until the final adjudication of the court upon the matter before it. The answer of the defendant, when ana-

lyzed, seems to present the following grounds for the justification or extenuation of the act for which he was called upon to answer. 1st. The failure of the sheriff to properly guard the prisoners. 2nd. That the court continued until the next day the motion to re-deliver them to the military authorities. 3d. That he was compelled to act in the manner he did by the orders of his superior officer, Major General Magruder. As a brief comment upon these assumptions in the defendant's answer, we will say : That he labored under a delusion if he supposed that he could be held officially responsible for any neglect of duty by the sheriff. If, however, he was in any way interested in the safe keeping of the prisoners, and the sheriff was derelict in duty, he should have brought the matter to the attention of the court, by whom it could and would have been properly corrected. No such fact, if indeed it were the case, was intimated to the court from any quarter, and the continued presence of the prisoners before the court from time to time, is, at least, *prima facie* proof of the sufficiency of their guard.

The continuance of a question by a court, that it may be correctly determined by the aid of proper reflection and the examination of precedent and authority, can only be regarded as a justification or extenuation of such an act as was committed by the defendant, when the civil tribunals of the country sit merely for the purpose of registering the edicts of the military authorities. The presentation of such a matter in an answer is rather an aggravation than an extenuation of the outrage committed upon the authority of the court.

Nor can an illegal act be justified, no matter how high the source from which it emanates, by an order from superior authority. Military officers are bound to obey all legal orders of those by whom they are commanded. But there is nothing better settled, as well by the military as the civil law, than that neither officers nor soldiers are bound to obey any illegal order of their superior officers; but, on the contrary, it is their bounden duty to disobey them. The soldier is still a citizen, and as such is always amenable to the civil authority. We are of opinion, therefore, that the orders of Maj. Gen. Magruder can furnish the defendant,

The State v. Sparks.

Maj. Sparks, no justification for his forcible interference with the jurisdiction of this court, and setting at naught its lawful orders. If, however, he was in truth acting, as he claims, in obedience to the orders of the Major General commanding this military district, it certainly would go far to excuse him. While an officer must not obey an unlawful order of his superior in command, yet, as in all cases where he declines obedience to it he acts at his peril, much indulgence should be shown in extenuation of his obedience to such orders from those he is ordinarily bound to obey. Especially should this be so, when the order comes to him from such high authority as that from which the one now in question is claimed to emanate.

But if these considerations extenuate the act of Maj. Sparks, they do so only by inculpating Maj. Gen. Magruder. If the act was done in obedience to his order, he is the principal offender. Those by whom he has, if this be so, perpetrated so glaring and palpable an outrage upon the law and the authority of this court, are alike subordinates in criminality, as inferiors in rank. But the high position of this officer and the important duties with which he is entrusted by the country, forbid that we should indulge the supposition, in a state of case upon which he has not been heard, that "he has converted the means of discipline, intended for the defence of order, into a means of disturbing that order, and thus has turned the instrument against the power that ought to wield it; for it is the civil government alone that stands for the State, and the military is only an instrument that it uses as its judgment requires." Better far would it have been, for the prisoners who are in custody of the court, though doubly guilty beyond all that has been charged against them, to go unwhipped of justice, than for the civil authorities of the State to be subordinated to military control, and made dependent upon the consent of the latter for the exercise of their legitimate functions. The one, though to be deprecated, would be of comparatively little importance, but the other would be a vital blow at the constitution, and the principle upon which our government is organized.

It is much to be regretted, especially at a time like the present, that the Major General charged with the defence of the State,

should, seemingly, be brought in conflict with the judicial author-
ity.   But we should be derelict in the discharge of the high trust
committed to us by the constitution and the laws, if we should
permit to pass unquestioned so palpable and glaring an outrage
upon the law and the mandates of the court in which we have
been called to preside, as that with which, we trust improperly,
Major General Magruder is implicated by the record now before
us.   We deem it, therefore, our duty as judges, our duty to the
country, and also our duty to Major General Magruder, to afford
him an opportunity of relieving himself from the improper attitude
in which, as the record now stands, he is presented before this
court.   In a judicial tribunal, the rights of the humblest citizen
are equal to those of the highest civil or military dignitary.   If
such an act as that in which Major General Magruder is here im-
plicated by the answer of Major Sparks, were charged upon an
unknown or private citizen, there is no question that it would be
said at once to be the imperative duty of the court to call him be-
fore it by attachment, to answer his apparent contempt of its
authority.   And if it were not for the situation of the country,
and the important duties with which Major General Magruder is
charged for its defense, this would be our plain duty in the pres-
ent instance.   But, under the circumstances which now surround
us, we think, while we endeavor to enforce respect for the author-
ity of the court, and to sustain the law, we should not be unmind-
ful in other respects of the public welfare, or forgetful of the im-
portant duties with which the distinguished officer, whose acts are
now in question, has been entrusted, or the respectful considera-
tion due to his high official position.   In view of all these consid-
erations, we are of opinion, and do, therefore, order that a citation
be issued to Major General Magruder, accompanied by a copy of
Major Sparks' answer in this case, and of this opinion, requiring
him to have an answer under oath before this court, at Tyler, on
or before the fourth Monday in April, 1864, and show cause why
he should not be held as having acted in contempt of the authority
of this court, in ordering said Sparks to take from the custody of
the court the prisoners heretofore named, and to disregard the
writ of *habeas corpus* issued by the court, by virtue of which

said prisoners were brought before it, or any subsequent writ which might be issued. It is further ordered that this case be transferred to Tyler, for further action, at the ensuing term of the court to be held at that place. In continuing the case, however, to Tyler, it is not deemed necessary to require the personal attendance of the defendant Sparks, upon the court at that place.

Ordered accordingly.