TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00612-CV







Peter C. Cole, Appellant



v.



Texas Army National Guard and Adjutant General Sam C. Turk, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 94-11385, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Lieutenant-Colonel Peter C. Cole appeals from a district-court judgment that
dismisses for want of subject-matter jurisdiction his actions against the Texas Army National
Guard, Adjutant General Sam C. Turk, and two unknown officers of the Texas Army National
Guard designated "Richard Roe" and "John Doe." Concluding the district court had subject-matter jurisdiction, we will reverse the judgment below and remand the cause to the district court.



THE CONTROVERSY


 The Adjutant General, relying upon sections 431.042(b)(2) and 431.089(a) of the
Government Code, and upon a regulation of the Adjutant General's Department deemed to be
authorized by those statutes, discharged Cole from the Texas Army National Guard involuntarily
and for cause determined by the Adjutant General without a hearing. Tex. Gov't Code Ann.
§§ 431.042(b)(2), .089(a) (West 1990). Cole sued for declaratory relief to the effect that his
discharge was illegal and ineffective on constitutional and statutory grounds, together with
ancillary relief in the form of a permanent injunction, attorney's fees, and costs of court. The
district court dismissed Cole's causes of action for want of subject-matter jurisdiction. Cole
appeals to this Court on a single point of error that the district court erred in ruling that it lacked
jurisdiction.



THE STATUTES


 Section 431.089 of the Government Code authorizes the Adjutant General to
discharge a person from the state military forces according to regulations adopted by the Adjutant
General or to federal law or regulations, and directs the Adjutant General to furnish an officer,
on termination of his or her appointment, a certificate of discharge stating the character of the
officer's service. Id. § 431.089(a), (b). Cole received an honorable-discharge certificate.

 Section 431.042(a) of the Government Code provides for the Governor's
appointment of commissioned officers in the Texas National Guard, refers to their qualifications,
and requires that they take the official oath. Id. § 431.042(a). Subsection (b) of the same statute
provides as follows:



(b) An officer is entitled to hold the position until the officer reaches 64 years
of age, unless earlier discharged or retired because of:


 (1) resignation;


 (2) administrative regulation;


 (3) individual application;


 (4) disability; or


 (5) cause determined by a court-martial or efficiency board legally
convened for that purpose. (1)



Id. § 431.042(b) (emphasis added). No court martial or efficiency board was convened to
consider and determine the cause for which Cole was discharged; no hearing was conducted by
anyone in that regard. Instead, he was purportedly discharged for cause under authority of the
"administrative regulation" next to be discussed.



THE REGULATION


 In 1981, the Adjutant General promulgated Texas Army National Guard Regulation
No. 635-100 ("TARNG 635-100"), entitled "Administrative Discharge of Officers and Warrant
Officers." (2) Paragraph 4 of the regulation sets out three basic grounds for the discharge of an
officer before he or she reaches age sixty-four: (1) at the officer's request; (2) for certain reasons
relating to promotion and assignment of officers; and (3) for cause, as described in the following
statement:



Officers who are substandard in performance of duty or conduct, deficient in
character, lacking in professional qualifications or status, or otherwise unsuited for
continued military service are not to be retained in the Texas [Army] National
Guard. Presence of one or more of these conditions will be sufficient basis for the
administrative discharge of an officer from the Texas [Army] National Guard.



TARNG 635-100, ¶ 4.

 Paragraph 5 of TARNG 635-100 specifies the procedures to be followed in
discharging an officer for a reason authorized in paragraph 4. Under paragraph 5a, lower level
commanders may request the resignation of an individual for any such reason. If the officer's
resignation is not forthcoming, the lower commander may request the Adjutant General to
discharge the officer. In deciding whether to approve the request, the Adjutant General "may
appoint a board of officers to investigate the appeal [sic] and provide pertinent recommendations
based on the findings of the board." TARNG 635-100, ¶ 5a. Paragraph 5b states, "The Adjutant
General may cause the administrative discharge of an officer for reasons indicated in paragraph
4 without the request or recommendation of an intermediate commander." Id. ¶ 5b. The Adjutant
General interprets paragraph 5b to mean that he may, on his own initiative and determination of
cause without a hearing, direct the discharge of an officer from the Texas Army National Guard. 
On that ground, he directed Cole's discharge in the present case. Cole disputes this construction
of paragraph 5b as being contrary to subsection 431.042(b)(5) of the Government Code, which
requires that discharges for cause be based upon "cause determined by a court martial or
efficiency board legally convened for that purpose." Tex. Gov't Code Ann. § 431.042(b)(5).



DISCUSSION AND HOLDINGS


 In Newth v. Adjutant General's Department, 883 S.W.2d 356, 360 (Tex.
App.--Austin 1994, writ denied), we held the legislature did not intend that the provisions of the
"Whistleblower Act," found in sections 554.001-.009 of the Government Code, should extend to
a Texas Army National Guard officer's claim that his military assignments were made in
retaliation for his reporting illegal activities by another member of the Guard. We reached that
holding based on our conclusion that the legislature did not intend the disruption of military
functions that would attend application of the Whistleblower Act to the Texas Army National
Guard. Id. at 357-60. We were careful to point out, however, that not all claims by military
personnel, in civilian courts and based upon wrongs suffered in the course of military service, are
barred because they would interfere with the efficient conduct of military functions. Id. at 357. 
Consequently, Newth cannot reasonably be understood as standing for the proposition that the
decisions and actions of military officers are immune from judicial inquiry whenever it may be
plausibly contended that a judicial remedy--an injunction, for example--will interfere with the
efficient conduct of military functions. (3)

 We deal in the present case with a different matter entirely--the long-standing rule
that equitable relief by injunction is available to prevent executive officers of government from
causing injury by administrative actions taken by them in excess of their authority. In such cases,
it "can not be said that the judicial power is fettered because the injury is attributable to a military
order." Sterling v. Constantin, 287 U.S. 378, 403 (1932). In the present context, the rule holds
that a civilian court may set aside a servicemember's administrative discharge when it is issued
without authority and results in a legally cognizable injury. Harmon v. Brucker, 355 U.S. 579,
581-82 (1958) (district court possessed jurisdiction to review propriety of less-than-honorable
discharge by Secretary of the Army based upon mistaken enlargement of his powers resulting
from misinterpretation of applicable statute). The district court in Harmon



had not only jurisdiction to determine its jurisdiction but also power to construe the
statutes involved to determine whether the [Secretary of the Army] did exceed his
powers. If he did so, his actions would not constitute exercises of his
administrative discretion, and in such circumstances as those before us [discharge
based on grounds not authorized by statute], judicial relief from this illegality
would be available.


Id. at 582; see also Alfred Avins, State Court Review of National Guard Courts-Martial and
Military Board Proceedings, 41 Cornell L.Q. 457 (1956); Christopher H. Landing, Judicial
Review of Administrative Discharges, 83 Yale L.J. 33, 59-60 (1973); Dag E. Ytreberg,
Annotation, Judicial Review of Military Action With Respect to Type of Discharge Given
Serviceman, 4 A.L.R. Fed. 343, 367-72 (1970).

 In most of the decisions referred to in the foregoing writings, a legally cognizable
injury existed because the plaintiff had received a discharge in a form less than honorable. This
was the case in Harmon, for example. See 355 U.S. at 582 ("Moreover, the claims presented in
these cases may be entertained by the District Court because petitioners have alleged judicially
cognizable injuries."). Cole is not stigmatized by such a discharge. Nevertheless, we believe he
has alleged a legally cognizable injury because section 431.042(a) of the Government Code
confers upon officers of the Guard a statutory right to hold their position until they reach age 64
unless legally discharged or retired earlier for one of the reasons stated in section 431.042(b) of
the Code. Tex. Gov't Code Ann. § 431.042(a), (b). If Cole's discharge was illegal, as he
contends, he will have been deprived of the statutory right unless the discharge is set aside as he
requests.

 The Adjutant General conceded in oral argument that he discharged Cole "for
cause" and the attachments to Cole's petition indicate as much without a doubt. The district court
had power to determine its jurisdiction and the power to construe the relevant statutes and
regulations to determine if the Adjutant General exceeded his powers. Nothing in the text of
TARNG 635-100 gives the Adjutant General an express power to discharge for cause determined
by him alone and without a hearing. The Adjutant General has only inferred that power from the
text of the regulation, apparently on the doubtful theory that because the regulation does not
expressly require him to obtain a board determination of cause, he is not required to do so. See
TARNG 635-100, ¶ 5b. We must reject his inference, however, for a more important reason--a
statute denies him the power he claims.

 Section 431.042(b)(5) of the Government Code explicitly directs that when the
discharge of an officer is based on "cause," the determination of cause shall be made by a court
martial or by an "efficiency board legally convened for that purpose." It is undisputed here that
neither a court martial nor an efficiency board made a determination of cause preceding Cole's
purported discharge for cause. "[W]here a [statutory] power is granted, and the method of its
exercise prescribed, the prescribed method excludes all others, and must be followed." Foster
v. City of Waco, 255 S.W. 1104, 1105 (Tex. 1923); see also Cobra Oil & Gas Corp. v. Sadler,
447 S.W.2d 308, 311 (Tex. 1968); Balios v. Texas Dep't of Pub. Safety, 733 S.W.2d 308, 311
(Tex. App.--Amarillo 1987, writ ref'd). Moreover, the Adjutant General is not free to create a
new particular power in himself by "administrative regulation" when that power has not been first
delegated to him by statute, either expressly or by necessary implication. Sexton v. Mount Olivet
Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.). We find no
such delegation of power. Consequently the Adjutant General was powerless to discharge Cole
based upon the Adjutant General's own determination of cause because the relevant statute
provides that discharges for cause shall be based upon cause determined by a court martial or by
an efficiency board convened for the purpose. TARNG 635-100 must be construed and must
operate consistently with the statute.

 We hold accordingly, sustain the point of error, reverse the judgment below, and
remand the cause to that court. We need not discuss whether Cole's discharge is invalid on
constitutional grounds.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: July 12, 1995

Publish

1.   The discharge of an appointed officer for "cause" does not mean the arbitrary will of
the appointing power, for that might be the outgrowth of passion, which would in reality be
no cause at all. Rather, the phrase means some cause affecting or concerning the ability and
fitness of the incumbent to perform the duty imposed upon him or her. It means
inefficiency, incompetency, or other kindred disqualification. Street Comm'rs of Hagerstown
v. Williams, 53 A. 923, 925 (Md. 1903); see also Black's Law Dictionary 644 (6th ed. 1990)
(defining "for cause").
2.   For purposes of discussion only, without mentioning or deciding the issues, we will
make two assumptions pertaining to the controversy. The first is that TARNG 635-100 is a
regulation that is generally valid because it was promulgated according to procedures
required by law in an exercise of a rulemaking power delegated to the Adjutant General by
the legislature. The second is that no federal statute or regulation applies to the controversy. 
Any discussion of the particulars of these assumptions is unnecessary and would extend our
opinion inordinately.
3.   So long as the courts are open and able to act effectively, the fundamental rule is this: 
"The military shall at all times be subordinate to the civil authority." Tex. Const. art. I,
§ 24. The powers and duties of the Adjutant General of Texas "are derived from, they must
be found in, the civil law. At no time and under no conditions are [his] actions above court
inquiry or court review." Constantin v. Smith, 57 F.2d 227, 238 (E.D. Tex.), aff'd, Sterling v.
Constantin, 287 U.S. 378 (1932) (emphasis added). "What are the allowable limits of military
discretion, and whether or not they have been overstepped in a particular case, are judicial
questions." Sterling, 287 U.S. at 401 (emphasis added). Thus, there can be no question of the
district court's power to inquire whether a military officer's administrative order exceeds his or
her authority. See, e.g., State v. Sparks, 27 Tex. 627 (1864).


The courts do not interfere with most military decisions and actions, however, because they are
ordinarily taken within the limits of military power and discretion. The courts do not wish to
hamper military efficiency and they ordinarily have no familiarity with applicable "military law,"
that is to say the law applicable to military justice, the law of war, martial law, and military
government. See Alfred Avins, State Court Review of National Guard Courts Martial and
Military Board Proceedings, 41 Cornell L.Q. 457, 470-71 (1956).