2003 WY 43

**Roger C. NYBERG, Appellant (Plaintiff),**

v.

**STATE of Wyoming MILITARY DE-PARTMENT; Major General Ed Boenisch, Individually and in his Official Capacity as Adjutant General, State of Wyoming, Appellees (Defendants).**

No. 02–117.

Supreme Court of Wyoming.

March 31, 2003.

C.M. Aron of Aron and Hennig, LLP, Laramie, WY, Representing Appellant. Argument by Mr. Aron.

Hoke MacMillan, Attorney General; John W. Renneisen, Deputy Attorney General; and John D. Rossetti, Senior Assistant Attorney General, Representing Appellee. Argument by Mr. Rossetti.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Roger Nyberg (Nyberg) appeals the district court's dismissal of his complaint in which he sought damages and reinstatement as a Wyoming Air National Guard (WANG) technician based on, among other things, wrongful termination and deprivation of civil rights under 42 U.S.C. § 1983. The district court dismissed both these claims for lack of subject matter jurisdiction. We affirm.

### ISSUES

[¶ 2] Nyberg presents two issues for review:

1. Whether a National Guard order based on federal authority, and on the recommendations of a federal administrative board under federal regulations, is a state agency action subject to judicial review by a Wyoming District Court.

2. Whether the federal *Feres* doctrine, by which the federal government is immune from tort claims by soldiers, grants civil rights claims immunity to conduct of the Wyoming Adjutant General where:

 (a) the federal military determines the conduct to be in dereliction of military duty; and

 (b) the Adjutant General claims the conduct to be state agency action.

The State of Wyoming, Military Department (State) and Ed Boenisch as Adjutant General (Boenisch) phrase the issues as follows:

1. Did the District Court correctly determine that it lacked jurisdiction over Nyberg's wrongful termination claim for the reason that Nyberg failed to seek judicial review of final agency action under the Administrative Procedure Act and the Wyoming Rules of Appellate Procedure?

2. Was the dismissal of Nyberg's 42 U.S.C. § 1983 claim against the State and Boenisch proper pursuant to the *Feres* doctrine?

### FACTS

[¶ 3] Nyberg was a Lieutenant Colonel in WANG. In order to maintain his state officer appointment, Nyberg was required to maintain his federal recognition as a military officer. Nyberg was also employed as a National Guard technician in the Wyoming Guard. A condition of his technician employment was that he remain a member of WANG. On October 14, 1997, the Wing Commander, Colonel Robert D. Rodekohr, recommended to Boenisch that Nyberg be separated from WANG on the basis of misconduct.

[¶ 4] On October 14, 1997, Nyberg received a letter of Notification of Recommendation for Separation or Discharge. The letter informed him that it was being recommended that he be separated from WANG and as a reserve officer in the United States Air Force in accordance with AFI 36–3209, Chapter 2, Section C. A discharge board was convened and hearings were held. Nyberg was present at the hearing and utilized both military and civilian counsel. Nyberg was allowed to introduce evidence, call witnesses, and cross examine the witnesses against him.

[¶ 5] The discharge board deciding the issue consisted of three officers, superior in rank to Nyberg, from outside the command. The board concluded that misconduct occurred and recommended that Nyberg be discharged from both WANG and as a reserve officer in the United States Air Force. The record of the board's proceedings was forwarded to Major Paula Zaleski for legal review and recommendations. Zaleski completed a detailed legal review and issued a report to Boenisch. This report recommended acceptance of the board's findings. Boenisch decided to separate Nyberg from

WANG. Boenisch then forwarded the record to the Secretary of the Air Force for a determination of whether Nyberg would be separated as a reserve officer in the United States Air Force. Nyberg's federal recognition was never withdrawn; but, because he was no longer a member of WANG, Nyberg's military technician employment was terminated.

[¶ 6] On September 13, 2000, Nyberg filed an action against the State and Boenisch for money damages, a permanent injunction, and reinstatement. In his complaint, Nyberg alleged that as a National Guard technician he could only legally be terminated by proper application of federal procedures, in this case Air Force Instruction (AFI) 36–3209, or if he was discharged from WANG in compliance with Wyo. Stat. Ann. § 19–2–301(b) (Michie 1997).[1] This statute requires that the discharge be either for cause on the recommendation of an efficiency board or upon conviction by court martial for violation of military law. Nyberg alleged that these procedures were not followed because a state efficiency board was never convened, a court martial never took place, and AFI 36–3209 was not followed. Instead, he contends the discharge board deciding the issue was a Withdrawal of Federal Recognition Board, which only allowed the Adjutant General to recommend withdrawal of Nyberg's federal recognition, not discharge Nyberg from WANG.

[¶ 7] The State and Boenisch filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to W.R.C.P. 12(b)(1) and 12(b)(6). On January 14, 2002, the district court dismissed the wrongful termination claim for lack of

subject matter jurisdiction. The district court found that the defendants were an agency within the scope of the Wyoming Administrative Procedure Act and that the order separating Nyberg from WANG was a final agency action. Because Nyberg failed to file a petition for review of the final administrative action, the district court found that judicial review was time barred. On March 20, 2002, the court further dismissed the civil rights claim for lack of subject matter jurisdiction based on the *Feres* doctrine ruling that the claims were nonjusticiable. These orders are the subject of this appeal.

## STANDARD OF REVIEW

[¶ 8] The ultimate question for our review is whether the district court has subject matter jurisdiction over Nyberg's wrongful termination claim and his 42 U.S.C. § 1983 claim. The district court found that it lacked subject matter jurisdiction to hear the claims. A court has jurisdiction when it has the "power to hear and determine a matter in controversy." *Garnett v. Brock*, 2 P.3d 558, 561 (Wyo.2000) (citing *In Interest of MFB*, 860 P.2d 1140, 1146 (Wyo.1993)). We review jurisdictional questions de novo pursuant to our power and duty to address jurisdictional defects. *Id.* (citing *Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo.1996)).

## DISCUSSION

### *Wrongful Termination*

[¶ 9] Although not presented by either party, our determination of this issue requires a brief review of the body of case law involving the military and military per-

---

1. Wyo. Stat. Ann. § 19–2–301(b) (Michie 1997) reads:

 (b) All officers appointed in the national guard of Wyoming except the adjutant general shall hold their appointments until they have reached sixty four (64) years of age unless retired prior to that time by reason of resignation, disability, withdrawal of federal recognition, transfer to armed forces reserves or for cause to be determined by a court-martial or efficiency board legally convened for that purpose.

 This statute has subsequently been amended and renumbered. The comparable statute now reads:

 (b) All officers appointed in the national guard of Wyoming except the adjutant general shall hold their appointments until they have reached sixty-four (64) years of age unless retired prior to that time by reason of resignation, disability, withdrawal of federal recognition, transfer to armed forces reserves or for cause to be determined by a courts-martial or administrative board legally convened for that purpose.

 Wyo. Stat. Ann § 19–90–301(b) (Lexis Nexis 2001).

sonnel. A fairly well established principle from this body of law is claims brought by military personnel for injuries arising from or in the course of activity incident to military service are nonjusticiable. *Texas Adjutant General's Dep't v. Amos,* 54 S.W.3d 74, 77 (Tex.App.2001) (citing *United States v. Stanley,* 483 U.S. 669, 683–84, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace,* 462 U.S. 296, 305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Holdiness v. Stroud,* 808 F.2d 417, 423 (5th Cir.1987); *Crawford v. Texas Army Nat'l Guard,* 794 F.2d 1034, 1035 (5th Cir.1986); *Newth v. Adjutant General's Dep't,* 883 S.W.2d 356, 357 (Tex.App.1994)). We are called on to decide whether the reach and purpose of this well established principle is applicable to the case before us.

[¶ 10] The current climate of nonjusticiability for suits brought by military personnel can be traced back in large part to the case of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres,* the Supreme Court held that the waiver of sovereign immunity provided by the Federal Tort Claims Act (FTCA) is subject to an exception. This exception, known now as the *Feres* doctrine, generally stands for the proposition that the federal government cannot be sued by members of the armed services for injuries that "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159.

[¶ 11] In a later decision, the United States Supreme Court explained that the *Feres* doctrine is based on concern for the "peculiar and special relationship" between the soldier to his superiors, the effect such suits have on discipline, and the extreme results that might follow if suits under the FTCA were allowed for orders given or acts committed in the course of military duty. *Amos,* 54 S.W.3d at 77 (citing *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954)). In a subsequent decision, the United States Supreme Court articulated three factors supporting the *Feres* doctrine:

1) state law should not affect the government's liability to military members because the relationship between the parties is distinctly federal; 2) no fault compensation schemes exist to compensate military members; and 3) the negative effect judicial review would have on military discipline. *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 672–73, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977).

[¶ 12] Although *Feres* is often thought of only in connection with claims under the FTCA, the United States Supreme Court expanded the doctrine in *Chappell v. Wallace,* holding that military personnel may not seek to remedy alleged constitutional violations committed by their superior officers by pursuing a *Bivens*[2] type action for damages. *Amos,* 54 S.W.3d at 77 (citing *Chappell v. Wallace,* 462 U.S. at 305, 103 S.Ct. at 2362). In the course of its holding, the Court explained that the *Feres* doctrine is founded, at least in part, on the notion that the military relies on a unique "hierarchical structure of discipline and obedience to command" not found in civilian settings. *Chappell v. Wallace,* 462 U.S. at 300, 103 S.Ct. at 2366. The Court concluded that if service members were permitted to expose their superior officers to personal liability, "[t]he special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined." *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367. In discussing its holding, the Court noted that it was not adopting a per se rule that military personnel could never seek redress in civilian courts for all wrongs suffered in the course of military service. *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2368. The Court did however dictate that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Estab-

---

**2.** In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court held that victims of constitutional violations may sue in federal court the federal official committing the violations despite the absence of explicit statutory authorization for such a suit.

lishment." *Amos,* 54 S.W.3d at 77–78 (quoting *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2366; *Newth,* 883 S.W.2d at 357).

[¶ 13] After *Chappell,* courts broadly applied the *Feres* doctrine. For instance, courts have applied the *Feres* doctrine to FTCA claims, claims under 42 U.S.C. § 1983, and *Bivens* claims. *Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004, 1005–08 (8th Cir.1989). Court decisions in this area seemed to be "guided by an increasing sense of awe for things military." *Persons v. United States,* 925 F.2d 292, 295 (9th Cir.1991) (quoting *United States v. Johnson,* 481 U.S. 681, 691, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987)). "[P]ractically any suit that 'implicates the military judgments and decisions' … runs the risk of colliding with *Feres.*" *Id.* One court has concluded, "the permissible range of lawsuits by present or former servicemen against their superior officers is, at the very least, narrowly circumscribed." *Crawford v. Texas Army Nat'l Guard,* 794 F.2d at 1035.

[¶ 14] In 1987, the United States Supreme Court again revisited *Feres* in *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), in response to confusion about when exactly the *Feres* doctrine as analyzed in *Chappell* applied. The Court held that the *Chappell* approach applies to all activities performed "incident to service."

> A test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere process of arriving at correct conclusions would disrupt the military regime. The "incident to service" test, by

contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters.

*Stanley,* 483 U.S. at 682–83, 107 S.Ct. at 3063. In sum, as a general rule the *Feres* doctrine is applicable "whenever a legal action 'would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States.' " *Hodge v. Dalton,* 107 F.3d 705, 710 (9th Cir.1997) (quoting *McGowan v. Scoggins,* 890 F.2d 128, 132 (9th Cir.1989)).

[¶ 15] Even though all three factors supporting *Feres* as articulated in *Stencel* are not present in state actions, the third and possibly most important factor weighs heavily in favor of the nonjusticiability of these claims. *See Stencel,* 431 U.S. at 672–73, 97 S.Ct. at 2058–59. Judicial review of National Guard personnel decisions certainly creates the potential for a negative effect on military discipline. We therefore hold that state courts cannot entertain suits by Guard personnel arising out of Guard employment except in two narrow circumstances.[3] We have several reasons for doing so.

[¶ 16] First, decisions regarding the discharge of members of the military are precisely the type of military decisions civilian courts should refrain from reviewing. *Amos,* 54 S.W.3d at 78. The "special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel' " instead of involving civilian courts in such decisions. *Chappell,* 462 U.S. at 305, 103 S.Ct. at 2368. The climate of discipline and unquestioned obedience present in the military requires that people familiar with military needs, not civilian courts, determine military personnel issues.

[¶ 17] Allowing soldiers to sue superior officers and the military department would be imprudent. Such action would "require commanding officers to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary deci-

---

**3.** This case does not present the issue of how *Feres* would apply with respect to tort claims under the Wyoming Governmental Claims Act, which is much different than the FTCA. We,

therefore, do not decide such an issue today, but do adopt the doctrine as it relates to suits by Guard personnel arising out of Guard employment.

sions such as whether to overlook a particular incident or episode and whether to discharge a serviceman." *Amos,* 54 S.W.3d at 79 (citing *United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985)). Suits by Guard personnel regarding Guard employment would destroy the legitimacy and authority of command. Surely the legislature did not intend the disruption that would occur upon judicial review of discretionary military personnel decisions. We are, as noted by the Court in *Chappell,* ill-equipped to evaluate the impact of such court actions on military discipline and must therefore defer to the military on such matters. *See Chappell,* 462 U.S. at 305, 103 S.Ct. at 2368. We, like many other civilian courts, are particularly unqualified to assess the correctness of military personnel actions.

[¶ 18] Second, we consider that the test for application of the *Feres* doctrine is whether the harm occurred incident to service. We have no trouble concluding that the injuries Nyberg claims resulted incident to military service. The United States Supreme Court noted in *United States v. Shearer,* 473 U.S. at 58–59, 105 S.Ct. at 3043, that the decision to discharge a serviceman is essentially a professional decision and that the attempt to hale military officials into court to account for their decision must fail.

[¶ 19] Third, we consider the role the National Guard plays in the nation's defense force and the degree to which the National Guard is regulated by the federal government. The National Guard has been described as an organization with both state and federal characteristics. Courts have explained that the National Guard does not fit completely within the scope of either state or national concerns. *Bowen v. Oistead,* 125 F.3d 800, 802 n. 1 (9th Cir.1997) (citing *Knutson v. Wisconsin Air Nat'l Guard,* 995 F.2d 765, 767 (7th Cir.1993); *New Jersey Air Nat'l Guard v. Federal Labor Relations Auth.,* 677 F.2d 276, 279 (3d Cir.1982)). Instead, the National Guard is a hybrid organization serving the state in which it is located as well as the federal government in times of need. *Knutson,* at 767. At the state level, the National Guard is a state agency, under state authority and control. At the same

time, federal law provides for a large part of the activity, makeup, and function of the Guard. *New Jersey Air Nat'l Guard,* at 279. Describing the relationship between the state and federal authority governing the National Guard, the First Circuit Court of Appeals stated the following:

> The Defense Department, the Secretaries of the Army and Air Force, and the National Guard Bureau prescribe regulations and issue orders to organize, discipline, and govern the Guard. 32 U.S.C § 110. States that fail to comply with federal regulations risk forfeiture of federal funds allocated to organize, equip, and arm state Guards. *Id.* §§ 101, 107, 108, 501; *Knutson,* 995 F.2d at 767.

*Charles v. Rice,* 28 F.3d 1312, 1315–1316 (1st Cir.1994). Our own statutes require that beyond state law, the laws, regulations, and customs covering the United States Army and Air Force govern the National Guard. Wyo. Stat. Ann § 19–9–101(a) (LexisNexis 2001).

[¶ 20] Command of the National Guard at the state level is vested in the governor of each state, and his appointee, the Adjutant General. *Charles,* 28 F.3d at 1315; 32 U.S.C. § 314. The Adjutant General is a state officer appointed by the governor but he is also an agent of the United States in his capacity as an administrator for federal technicians. *Williams v. Colorado Air Nat'l Guard,* 821 P.2d 922, 924 (Colo.App.1991) (citing *Costner v. Oklahoma Army Nat'l Guard,* 833 F.2d 905 (10th Cir.1987)). Therefore, while the Wyoming National Guard appears to fit the definition of a state agency found in Wyo. Stat. Ann. § 16–3–101(b)(i) (LexisNexis 2001), it is not a pure state agency because of its required compliance with federal military regulation. The Adjutant General also serves in a dual role, as he is both a state appointee and an administrator of federal programs.

[¶ 21] Because the National Guard is governed in part by the federal military, we find federal decisions to be relevant in determining the proper scope of judicial inquiry into claims by Guard members. Federal courts have applied the *Feres* doctrine to the National Guard. "It is beyond question

that the *Feres* doctrine generally applies to claims brought by National Guard members." *Stauber v. Cline,* 837 F.2d 395, 399 (9th Cir.1988); *see also Wright v. Park,* 5 F.3d 586, 588 (1st Cir.1993); *Uhl v. Swanstrom,* 79 F.3d 751 (8th Cir.1996); *Lovell v. Heng,* 890 F.2d 63 (8th Cir.1989); *Estate of Himsel v. State,* 36 P.3d 35, 45 n. 13 (Alaska 2001) (Matthews, Chief Justice, dissenting, collecting cases). Several state courts have applied the *Feres* doctrine as well. *Estate of Himsel,* 36 P.3d at 40 and n. 21 (citing *Mangan v. Cline,* 411 N.W.2d 9, 11–12 (Minn.App.1987); *Zaccaro v. Parker,* 169 Misc.2d 266, 645 N.Y.S.2d 985, 990–91 (1996), *Wade v. Gill,* 889 S.W.2d 208, 209–10, 214–15 (Tenn.1994); *Newth v. Adjutant General's Dep't,* 883 S.W.2d 356, 357 (Tex.App.1994)). Three states have declined to adopt *Feres* including Montana, Washington, and Alaska. *Estate of Himsel,* 36 P.3d at 40 (citing *Trankel v. State, Dep't of Military Affairs,* 282 Mont. 348, 938 P.2d 614, 621 (1997); *Emsley v. Army Nat'l Guard,* 106 Wash.2d 474, 722 P.2d 1299, 1302 (1986); *but see* the dissent in *Himsel,* 36 P.3d at 45 n. 14 asserting that these courts reject the doctrine of intra-military immunity but nonetheless make clear that claims by Guard personnel arising out of their Guard employment against the state are not permitted for other reasons).

[¶ 22] We follow the vast majority of federal courts and those state courts that apply this body of law to suits involving the National Guard. The same policies that support the nonjusticiability of claims in the United States Armed Forces arena support the nonjusticiability of claims in the National Guard arena. Judicial review would undermine the military in the performance of its duties. In fact, Nyberg recognizes in his brief that actions taken by the National Guard are generally not subject to judicial review. He states "[i]f judicial review could be sought for a unilateral personnel decision by the State of Wyoming Military Department, this Court would be inundated with petitions for review of each such action. Every demotion, every denied promotion and every disciplinary action by a National Guard officer could be subject to judicial review."

[¶ 23] Having recognized the general rule and its applicability to suits involving the National Guard, we now must recognize that exceptions to the *Feres* doctrine exist. The Eighth Circuit recognizes two such exceptions. First, facial challenges to the constitutionality of a military regulation or statute are not barred. Second, limited judicial review of final agency action is permitted if the official has acted beyond the scope of his statutory and regulatory authority. *Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004, 1010–11 (8th Cir.1989). The United States Supreme Court has entertained many suits involving facial constitutional challenges to military regulations and statutes. *Watson,* 886 F.2d at 1010 (citing *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (free exercise challenge to the application of an Air Force regulation restricting the wearing of headgear); *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (Fifth Amendment challenge to all-male draft registration); *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (First Amendment challenge to regulations concerning the circulation of petitions on Air Force bases); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (vagueness and overbreadth challenges to criminal provisions of the military code); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (Fifth Amendment challenge to statutes claimed to discriminate against women in military benefits)). As these cases demonstrate, on a federal level, a military member is able to challenge the constitutionality of a particular statute or regulation related to the military regardless of the *Feres* doctrine. We hold the same to be true on the state level. National Guard members are able to challenge the constitutionality of particular state statutes or regulations.

[¶ 24] An explanation of the second exception can be seen by examining Texas court decisions. Courts in Texas have adopted *Feres* and have held that state law claims would undermine military decision making as surely as the federal claims held to be nonjusticiable. *See Newth v. Adjutant General's Dep't,* 883 S.W.2d at 357. However, Texas also recognizes the second excep-

tion in which civilian courts may review military decisions. *Amos,* 54 S.W.3d at 78. This narrow exception is recognized "to prevent executive officers of government from causing injury by administrative actions taken by them in excess of their authority." *Id.* (quoting *Cole v. Texas Army Nat'l Guard,* 909 S.W.2d 535, 538 (Tex.App.1995)).

[¶ 25] In *Cole,* a National Guard member brought suit against the Texas Army National Guard and the Adjutant General claiming that his discharge was illegal because the Adjutant General had failed to convene an efficiency board before his dismissal. *Cole,* 909 S.W.2d at 536–37. The Texas government code, similar to our statute, allowed the officer to hold his position until he reached the age of sixty-four or until among other things he was discharged by a court martial or efficiency board. *Id.* When discharging Cole, the Adjutant General had failed to convene either a court martial or an efficiency board and had made the discharging decision unilaterally without a hearing. The court held that Cole could bring suit because it was the court's responsibility to make sure the Adjutant General did not exceed his power.

[¶ 26] In making its decision the court stated:

"What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are *judicial* questions." *Sterling,* 287 U.S. at 401, 53 S.Ct. at 196 (emphasis added). Thus, there can be no question of the district court's power to inquire whether a military officer's administrative order exceeds his or her authority. *See, e.g., State v. Sparks,* 27 Tex. 627 (1864).

The courts do not interfere with most military decisions and actions, however, because they are ordinarily taken within the limits of military power and discretion. The courts do not wish to hamper military efficiency and they ordinarily have no familiarity with applicable "military law," that is to say the law applicable to military justice, the law of war, martial law, and military government. *See* Alfred Avins, *State Court Review of National Guard*

*Courts Martial and Military Board Proceedings,* 41 Cornell L.Q. 457, 470–71 (1956).

*Cole,* 909 S.W.2d at 538 n. 3.

[¶ 27] This court has held in a similar manner. In *State ex rel. Pearson v. Hansen,* 401 P.2d 954 (Wyo.1965), this court had the opportunity to consider a discharging decision within the National Guard. In *Hansen,* the newly elected governor removed Pearson as the Adjutant General without convening an efficiency board or a court martial contrary to the statute at the time.[4] Pearson claimed that the governor had wrongly relieved him of his duties because he had not held a court-martial or an efficiency board. *Id.* at 955–56. We stated: "It is our duty to take the statutory law as we find it and to see to it that the powers conferred upon public officials are not abused." *Id.* at 957. Because the governor had not complied with the requirements of the statute, this court held that the governor exceeded his powers and reinstated the adjutant general to his position. *Id.* at 960.

[¶ 28] We therefore agree with the well-reasoned discussion of the Texas courts and recognize this second narrow exception to the principle of judicial deference for military decisions. The district court has the power to construe the relevant statutes and determine if the Adjutant General exceeded his powers. "[W]here a [statutory] power is granted, and the method of its exercise prescribed, the prescribed method excludes all others, and must be followed." *Cole,* 909 S.W.2d at 539 (quoting, *Foster v. City of Waco,* 113 Tex. 352, 255 S.W. 1104, 1105 (1923)).

[¶ 29] In looking at the face of Nyberg's complaint, it appears the portion of his claim that asserts that his discharge was not in compliance with Wyo. Stat. Ann. § 19–2–301(b) may have fit within this narrow exception. As we noted, however, in ¶ 19, the National Guard is a hybrid organization and to the extent the National Guard is a state entity it is an agency. As such, when contesting the exercise of the Adjutant General's

---

4. At that time the exception of the adjutant general from the requirements of the statute was not provided as it is now. *Hansen,* 401 P.2d at 957 (citing Wyo. Stat. Ann. § 9–19 (1957)).

authority, one must do so within the confines of the Wyoming Administrative Procedure Act.

[¶ 30] This requires compliance with W.R.A.P. 12.04, i.e., a petition for a writ of review of a final agency action must be filed within 30 days. Nyberg failed to comply with this rule. He waited two years to contest the discharge decision. Even though Nyberg has a colorable argument that his complaint fit the exception, he is time barred from asserting such an argument. The portion of Nyberg's argument regarding AFI 36–3209 does not fit within either exception and is barred by the *Feres* doctrine. If Boenisch violated federal military rules, it is the military that must provide an avenue of relief not a civilian court. We therefore hold that the district court did indeed lack the subject matter jurisdiction to hear Nyberg's claim.

### 42 U.S.C. § 1983 Claim

[¶ 31] Nyberg asserted claims against both the Wyoming Military Department and Boenisch under 42 U.S.C. § 1983 for deprivation of his civil rights. At this time it is worth noting that Nyberg makes no constitutional attack on any statute or regulation. Rather, he challenges the constitutionality of a discrete personnel action, i.e., whether he was denied due process when being discharged. Therefore, he does not fall within either of the exceptions previously noted.

[¶ 32] As with the first issue, we find federal decisions interpreting this issue helpful. Many federal courts have extended the ban on *Bivens* actions set forth by *Chappell* to 42 U.S.C. § 1983 actions against state National Guard officials. *Watson v. Arkansas Nat'l Guard,* 886 F.2d at 1007 (citing *Brown v. United States,* 739 F.2d 362, 367 (8th Cir.1984); *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984); *Holdiness,* 808 F.2d at 423; *Jorden v. Nat'l Guard Bureau,* 799 F.2d 99, 107–108 (3d Cir.1986); *Crawford v. Texas Army Nat'l Guard,* 794 F.2d at 1036).

[¶ 33] In *Wright v. Park,* 5 F.3d 586, 591 (1st Cir.1993), the First Circuit stated "there is no principled basis for according state

actors sued under 42 U.S.C. § 1983 a different degree of immunity than would be accorded federal actors sued for an identical abridgement of rights under *Bivens.*" We agree and can think of no basis for such a decision either. The difference in the claims is due solely to the identity of the defendant. *Martelon v. Temple,* 747 F.2d at 1350–51. In this case the defendants are state officers so relief must be sought under § 1983, whereas with *Bivens* claims the defendants are federal officers. *Id.* All the policies and reasons for the *Feres* doctrine discussed in the first section of this opinion apply to this issue as well. To the extent *Feres* protects federal military personnel from *Bivens* claims, it should also shield state military officers from constitutional claims brought under 42 U.S.C. § 1983. *Bowen,* 125 F.3d at 803, n. 2.

[¶ 34] Lastly we would note that a purpose of the *Feres* doctrine is to provide for the proper relationship between the courts, Congress, and the military. It is a judicial doctrine deferring the resolution of matters "incident to service" to the military. *Bowen,* 125 F.3d at 805 (citing *Stauber,* 837 F.2d at 399). Our interference and meddling in internal National Guard matters would undermine the respect and loyalty each military member must have for their commanding officer as surely as a federal court meddling in the matters of Army would.

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Chappell,* 462 U.S. at 301, 103 S.Ct. at 2366 (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)).

[¶ 35] Entertaining a 42 U.S.C. § 1983 claim would surely require a civilian court to interfere in legitimate military matters. We

therefore hold that the district court did not err in dismissing Nyberg's 42 U.S.C. § 1983 claim for lack of subject matter jurisdiction based on the *Feres* doctrine.

## *CONCLUSION*

[¶ 36] For the above stated reasons we affirm the district court's order of dismissal for lack of subject matter jurisdiction.